STATE OF MINNESOTA ex rel. H. N. HAGESTAD v. T. A. SULLI-
VAN and Others.[1]

February 2, 1897.

Nos. 10,457—(301).

**Constitution—Laws 1895, c. 229.**

Laws 1895, c. 229, entitled "An act to establish municipal courts in incor-
porated cities having a population of less than 5,000 inhabitants," is not
an act "regulating the affairs of cities," within the meaning of section 33,
article 4, of the constitution, prohibiting special legislation on certain sub-
jects.

**Same—Delegation of Legislative Power.**

The fact that the taking effect of the act in a city is made contingent upon
a vote of the city counsel does not constitute a delegation of legislative
power.

Application by the state of Minnesota, on the relation of H. N.
Hagestad, for a writ of prohibition against F. A. Sullivan and
others.    Order to show cause discharged.

*A. C. Wilkinson* and *M. O'Brien,* for relator.

A law cannot be uniform in its operation when by its terms it is
limited to such portions of the state as may adopt it.    Nichols v.
Walter, 37 Minn. 264, 269, 33 N. W. 800; State v. Cooley, 56 Minn.
540, 552, 58 N. W. 150; Johnson v. St. Paul & D. R. Co., 43 Minn.
222, 45 N. W. 156.    Laws 1895, c. 229, is particularly obnoxious
to this rule, because it may be adopted by some cities of the class
specified, rejected by others of that class, or not acted upon by still
others of the class.    It is therefore not of uniform operation
throughout the state.    Const. art. 4, § 34; State v. Copeland, 66 Minn.
315, 69 N. W. 27.

By Const. art. 4, § 33, the legislature shall not amend a special
law.    Sp. Laws, 1887, c. 45, is the charter of East Grand Forks.
Section 13 of chapter 3 of the act provides that justices of the
peace of that city shall have sole jurisdiction of criminal cases, and

1 Reported in 69 N. W. 1094.

of all prosecutions under any ordinance of the city. Section 2 of chapter 229, Laws 1895, repeals that provision so as to vest such jurisdiction in municipal courts. The later law is therefore void. If the legislature cannot repeal a special law directly, it cannot repeal it indirectly. State v. Sullivan, 62 Minn. 283, 64 N. W. 813.

The act in question delegates to the common council the performance of an act belonging to the legislature under Const. art. 6, § 1. Laws 1895, c. 229, delegates to the common council of the city the power to establish the court. The act is therefore unconstitutional. State v. Simons, 32 Minn. 540, 21 N. W. 750.

*Warner, Richardson & Lawrence,* for respondents.

The establishment of a court is authorized by Const. art. 6, § 1, and Laws 1895, c. 229, was passed by a two-thirds vote of both branches of the legislature. Senate Journal, 414–598; House Journal, 482–594; Clem v. State, 33 Ind. 418; State v. County Court, 50 Mo. 317; Burch v. Hardwicke, 30 Grat. 24; People v. Hurlbut, 24 Mich. 44; People v. Wilson, 15 Ill. 388; Hercules Iron Works v. Elgin, J. & E. Ry. Co., 141 Ill. 491, 30 N. E. 1050; Knickerbocker v. People, 102 Ill. 218; Cummings v. Chicago, 144 Ill. 563, 33 N. E. 854; Jenkins v. State, 93 Ga. 1, 18 S. E. 992; Burke v. St. Paul, M. & M. Ry. Co., 35 Minn. 172, 28 N. W. 190; People v. Curley, 5 Colo. 412; Darrow v. People, 8 Colo. 420, 8 Pac. 661; State v. Berka, 20 Neb. 375, 30 N. W. 267; People v. Rucker, 5 Colo. 455.

The court should not construe a law so as to shock the moral sense and conscience. Hantzch v. Massolt, 61 Minn. 361, 63 N. W. 1069; National N. H. Bank v. Northwestern G. L. Co., 61 Minn. 375, 63 N. W. 1079. See Laws 1893, cc. 100, 148, 149, 163, 195, 196, 200, 204, 205. If the court declares all municipal courts organized under this law invalid, these courts were not even de facto courts and their acts are null and void ab initio. If this law is declared invalid then all the laws cited authorizing the issue of bonds are likewise invalid.

MITCHELL, J. By its application for an absolute writ of prohibition against the respondent Sullivan to restrain him from acting as judge of the municipal court of the city of East Grand Forks, the state challenges the constitutionality of Laws 1895, c. 229, en-

titled "An act to establish municipal courts in incorporated cities having a population of less than 5,000 inhabitants."

The act in question, after providing that there is thereby established a municipal court in each incorporated city in the state having a population of less than 5,000, then provides that such court shall be a court of record, and shall have jurisdiction of civil actions at law where the amount in controversy does not exceed $500, and shall have exclusive jurisdiction of all criminal complaints and examinations, and trials of criminal cases arising or triable within such city, heretofore triable before a justice of the peace, and that its jurisdiction shall be co-extensive with the limits of the county in which the city is situated. It excepts from its jurisdiction the classes of civil actions usually excepted in municipal court acts, such as divorce, libel, slander, and the like, and also actions involving the title to real estate. The judge of this court is to be elected by the qualified electors of the city at the general city election. Any vacancy in the office is to be filled by the governor of the state. The judge must be a qualified elector of the city, and he is given the general powers of judges of courts of record. The court must be held within the city. It is given full power and authority to issue all process, civil and criminal, necessary and proper to carry into effect the jurisdiction given to it by law, and its process may be directed for service to any police officer, marshal, or constable of the city, or to the sheriff of the county.

The act prescribes a complete code of procedure and practice in such courts. Section 7 provides that its judge shall be the chief magistrate of the city, and shall see that all criminal laws of the state, and the ordinances, laws, regulations, and by-laws of the city, are observed and executed. The city attorney has charge of the prosecution of all criminal cases for violations of city ordinances, and the county attorney of those for the violation of laws of the state, and, when the defendant is discharged or acquitted, the city is to pay the costs in the former and the county in the latter. All appeals from the judgments or orders of such courts are taken to the district court, in like manner and subject to the same rules of practice as in appeals from justices of the peace. After thus providing in positive terms for the establishment of a municipal court in every city in the state having a population of less than 5,000, the

act closes with section 39, which gives rise to the controversy in this case, and which reads as follows:

"Any city in the class mentioned in the title of this act which may wish to avail itself of the provisions of this act shall do so by a resolution of its common council, expressly accepting the provisions hereof, which resolution shall be adopted by vote of four-fifths of all the members of such council, and be approved by the mayor of such city; and this act shall not apply to any such city until the adoption as aforesaid of such resolution."

It is urged that, in view of the option thus given to each city whether the law shall apply to it, the act is unconstitutional because —First, it is special legislation "regulating the affairs of cities," within the meaning of section 33, article 4, of the constitution of the state; and, second, that it is a delegation of legislative power to the common councils of cities. A third and subsidiary point, to wit, that it is an amendment of a special act (the charter of East Grand Forks) by a special act, is included in the first point, and need not be separately considered.

1. We are of opinion that the act in question is not one "regulating the affairs of cities," within the meaning of the constitution.

It will be observed that the powers and duties of the courts provided for are purely and exclusively judicial. They have neither administrative nor legislative powers in the affairs of the municipalities. It is true that the judge is chosen by the electors of the city, and the court is to be held within the limits of the city, and is doubtless designed for the special convenience of its inhabitants; but this does not, in any proper sense, render the judge a municipal officer of the city, or the court a department of its municipal government. Its jurisdiction, within the limitations prescribed, is general, and not confined to the city, or to the inhabitants of the city. Although inferior in rank, it is as much a court of the state as is the district or probate court. The fact that it is given exclusive jurisdiction of criminal cases under either state laws or city ordinances, arising or triable within the city, or that its judge is made the "chief magistrate" of the city, does not affect the character of the court, or make it a department of the municipal government. It is one of the courts, inferior to the supreme court, which the legislature is authorized to establish by section 1, article 6, of the constitution of the state.

Under this section the legislature had the power, frequently exercised, to establish a local court for the convenience of a particular locality; as, for example, the courts of common pleas in the cities of St. Paul and Minneapolis. This they could do whenever, in their judgment, a necessity for it arose. Although section 33, article 4, of the constitution was adopted subsequently, yet we do not think it has, or was intended to have, the effect of limiting the power of the legislature, under section 1, article 6, to establish courts inferior to the supreme court. Ramsey county is a judicial district by itself. The judges of the district court are chosen by its electors, and are paid in part out of the county treasury. Would it be claimed that an act providing for additional judges of the district court in that county would be an act regulating the affairs of the county, within the meaning of the constitution? Or would an act changing the time of holding terms of the district court in a particular county be a law regulating the affairs of that county? We think not. We fail to see the distinction, in principle, between this case and the cases supposed. The mere fact that, in the exercise of judicial power, a municipal court is given exclusive jurisdiction of prosecution for violations of municipal ordinances, as already suggested, does not alter the case.

A constitutional provision or a statute must be adhered to and enforced, whether it works well or ill in practice; but this constitutional inhibition against special legislation must receive a reasonable and practical construction, and not be given a strained one, so as to tie the hands of the legislature beyond the intention of the people, as fairly indicated by its terms. Moreover, a cardinal rule in all such cases is that every reasonable doubt must be resolved in favor of the constitutionality of a legislative act. Special circumstances frequently create a necessity for the establishment of a local court in one locality which does not exist in others. It would be very difficult, if not impossible, to meet all these diverse conditions by a general law of uniform operation throughout the state. We could not say that the people, by adopting section 33, article 4, intended to limit the power of the legislature to establish new courts to the enactment of general laws of uniform operation.

2. The remaining question is whether the act delegates legislative power to the city councils.

We have neither the time nor the inclination to enter into any extended discussion of the much-mooted question of what does, and what does not, amount to a delegation of legislative power. One of the settled maxims in constitutional law is that legislative power cannot be delegated. It must be exercised by the legislature itself, to whom alone the people have conferred the power to make laws. But it is equally well settled that it is not always essential that a legislative act must in any event take effect as law after it leaves the hands of the legislature. If the law is, in its provisions, a complete statute in other respects when it leaves the legislature, its taking effect may be made conditional upon some subsequent event. When that event happens, the statute takes effect, and becomes the law, by force of legislative action, as fully as if they had unconditionally fixed the time when it should take effect. Such a law is not incomplete.

The only matter not absolutely determined by the legislature is the expediency of its going into operation, and that is made contingent upon the happening of a certain event, or the existence of certain circumstances. There are certain subjects of such a character that the operation of laws in respect to them peculiarly affect certain localities. In such case the willingness of the parties concerned to accept the law or avail themselves of its provisions is often made the contingency upon which its operation is made to depend. This municipal court act is of that character, and the legislature might properly make its operation in a particular city contingent upon the happening of some event or the doing of some act which would indicate the desire of its inhabitants to avail themselves of the provisions of the law. The legislature itself has declared what the law shall be when it takes effect, and also upon what contingency it shall take effect, and when that contingency happens it takes effect by force of the legislative will. This does not amount to a delegation of legislative power.

Order to show cause discharged.