# CHICKASHA COTTON OIL CO. v. LAMB & TYNER.

### No. 2081. Opinion Filed March 7, 1911.

#### (114 Pac. 333.)

1. **STATUTES—Local and Special Laws—Discretion of Legislature.** Under section 59, art. 5, of the Constitution which directs that no local or special law shall be enacted where a general law can be made applicable, the Legislature must determine whether a general law can be made applicable to the subject-matter in regard to which a special or local law is enacted; and a local or special law enacted in such case will be held valid by the courts.

2. **SAME—Constitutional Limitations.** Section 46, art. 5, Constitution, prohibits the enactment of special or local laws upon any of the subjects therein named, except such local or special legislation upon said subjects as are authorized by other provisions of the Constitution.

3. **SAME—Special Act Creating Superior Court.** The act of the Legislature approved March 12, 1910 (Laws 1910, c. 47,) establishing a county superior court in the city of Cl'nton, Custer county, does not violate those provisions of section 46, art. 5, of the Constitution, prohibiting the enactment of local or special laws regulating the affairs of counties or cities, creating offices in counties, or regulating the jurisdiction of courts.

4. **EVIDENCE—Admissibility—Agency.** In an action by physicians against an oil mill company for services rendered its employee, plaintiffs were permitted to testify that the messenger who called for them stated he had been sent by the president or manager of the company, and that the company would pay for the services. Held error in the absence of any other evidence showing such messenger to be the agent of the company.

5. **PRINCIPAL AND AGENT—Admissibility of Evidence—Agency.** The company defended against any liability on the ground that its manager did not contract for or request the services of plaintiffs, and that, if he did he was without authority to bind the company. The court refused to permit the manager to testify

as to what his authority was, and that he had no authority from the company to employ physicians to serve its employees in this class of cases. **Held** error.

(Syllabus by the Court.)

*Error from Superior Court, Custer County; J. W. Lawter, Judge.*

Action by Lamb & Tyner against the Chickasha Cotton Oil Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

*Andrew J. Welch,* for plaintiff in error.
*M. L. Holcombe,* for defendants in error.

HAYES, J. Throughout this opinion, plaintiff in error will be referred to as "defendant," and defendants in error as "plaintiffs."

This action originated before E. C. Ballew, a justice of the peace at Clinton in Custer county, and was brought by plaintiffs to recover upon an open account for medical services rendered to one Bill Lindley, an employee of defendant, in treating a gunshot wound received by said employee in a personal encounter with a trespasser upon defendant's premises. The justice court gave judgment for plaintiffs, from which defendant appealed to the county court of Custer county, where, upon a motion filed by plaintiffs, an order was made transferring the cause to the superior court of Custer county, located at Clinton. There was a trial to a jury in that court which resulted in a verdict and judgment for plaintiffs for the amount sued for. To reverse that judgment this proceeding in error is prosecuted.

One of the principal errors urged for reversal of the cause is that the trial court was without jurisdiction because of the invalidity of the act creating that court. The validity of the act is questioned by defendant upon the ground that it contravenes certain provisions of the Constitution. The act creating the superior court of Custer county was approved March 12, 1910 (Session Laws of Okla. 1910, p. 78). Since it is claimed by de-

fendant that different provisions of this act are in conflict with the Constitution, we here set out the act in full:

"An act creating and establishing a county superior court in the city of Clinton, Custer county, Oklahoma; fixing the jurisdiction and procedure; providing for a judge for said court; for the election, appointment, term of office and compensation of said judge; providing for a clerk and stenographer and fixing the compensation for the same, and declaring an emergency.

"Be It Enacted By the People of the State of Oklahoma:

"Section 1.    There is hereby created and established in the city of Clinton, Custer county, Oklahoma, court of civil and criminal jurisdiction, coextensive with the county, to be known as the superior court of such county, which shall be a court of record, and shall have and exercise the same jurisdiction as provided by law for other superior courts of this state: Provided, that the city of Clinton shall furnish, free of cost, a suitable building for said court.

"Sec. 2.    The said court shall be presided over by one judge who shall be a resident of Custer county.    Upon the approval of this act, the Governor shall appoint a judge for said court, who shall serve until the second Monday in January, A. D. 1911, and the judge of said court shall, by order of record, fix the terms of said court at not less than four terms each year; provided that the first term of said court shall begin as soon as practicable after said court is organized under the provisions of this act.

"Sec. 3.    At the general election of county officers to be held in the year 1910, and at every similar election every fourth year thereafter the qualified electors of Custer county shall elect a judge of such court for said county to serve from the second Monday of the following January until the second Monday of January four years thereafter and until his successor shall be elected and qualified.

"Sec. 4.    All fees, fines and forfeitures imposed by said court, and collected by the clerk thereof and the fees of witnesses appearing before such court shall be the same as provided by law for the district court in similar matters and shall be collected and disbursed in the same manner as collected and disbursed by the clerk of the district court.

"Sec. 5.    The judge of said court shall appoint a clerk who shall serve until the second Monday in January, 1911, or until

his successor is elected and qualified and such clerk shall be elected at every similar election every fourth year thereafter. The duties of such clerk shall be the same as is now provided by law for other clerks of superior courts in this state, and he shall give bond for the faithful performance of his duties as required of the clerk of the district court. The clerk of said court shall under and by direction of the judge thereof, procure a seal for said court which shall have engraved thereon the words 'Superior Court of Custer County, Oklahoma,' and said clerk shall receive the same fees and be paid in the same manner and amount as the clerk of the district court of Custer county.

"Sec. 6. The judge of said court shall appoint a stenographer whose fees and compensation shall be the same as provided by law for like services rendered by stenographers of the district courts, and shall be paid in the same manner as stenographers of the district courts, and the clerk of this court shall tax the same fee for stenographers as is provided by law for payment of stenographers in the district court.

"Sec. 7. The judge of such court shall be paid the same salary as the judge of the county court of Custer county at the passage of this act and in the same manner. The places for holding the terms of said court and the necessary supplies therefor shall be provided in the same manner as are now provided for the county courts of the state.

"Sec 8. The judge of the superior court of Custer county shall devote his entire time to his work as such judge and shall not act as counsel or attorney in any cause of action, civil or criminal, during his term of office."

The provisions of the Constitution which it is claimed the foregoing act violates are section 59 and subsections "b," "m," and "o" of section 46, art 5 (Snyder's Constitution, pp. 181, 159-164). Said section 59 reads as follows:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

In the enactment of the act in question, the Legislature observed all the requirements of the Constitution contained in section 32, art 5, for the enactment of a special or local law; and in

doing so gave notice of the intended introduction of said bill as required by that section.

Section 1, art. 7, of the Constitution provides:

"The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

The foregoing section was considered by this court in *Burks v. Walker*, 25 Okla. 353, 109 Pac. 544, wherein it was said by the court:

"That portion of the section reading, 'and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law,' clearly contemplates and provides that a portion of the judicial power of the state may be vested in other courts than those specifically named in the section. It is to be borne in mind that a state Constitution, in so far as it relates to the legislative department of the state, does not grant powers, but limits them, and such department possesses all the legislative powers not prohibited or restricted by the provisions of the Constitution. The only limitation imposed by this section upon the power of the Legislature as to other courts is that such courts shall be inferior to the Supreme Court."

In that case the court had under consideration the validity of the act of the Legislature creating and establishing a county superior court for each county of the state having a population of 30,000 and a city therein of 8,000. Sess. Laws 1909, p. 181. That law was passed as a general act, and its validity was attacked upon the ground that it was local and special and not of uniform operation throughout the state. But it was held in that case that the act was of uniform operation, and for that reason did not conflict with section 59, article 5, of the Constitution. Whether, if the act had been local or special, it would have been in violation of said provision of the Constitution, or any other provision of the Constitution, was not presented by that case or determined. In the instant case it is insisted that the act creates a court for only one county, not different in population and in other respects from

other counties of the state; and that it is therefore a local or special law. In response to this contention, plaintiffs insist that an act of the Legislature enacted in pursuance of the authority conferred by section 1, art. 7, *supra*, establishing any court, although it establishes a single court for a specific county or locality, is not a local act within the meaning of the inhibitions of the Constitution against the enactment of local or special measures; and there are very respectable authorities that support this contention, among which are the following: *State ex rel. v. Yancy*, 123 Mo. 391, 27 S. W. 380; *State v. Etchman*, 189 Mo. 648, 88 S. W. 643; *State ex rel. v. Sullivan*, 67 Minn. 379, 69 N. W. 1094; *Dahlsten v. Anderson*, 99 Minn. 340, 109 N. W. 697; *Ex parte Jordon*, 62 Cal. 464; *Waterman v. Hawkins*, 75 Ark. 120, 86 S. W. 844; *State v. Dalon*, 35 La. Ann. 1141; *State ex rel. Levy & Bro. v. Judge*, 39 La. Ann. 889, 2 South. 786; *Corey v. State*, 28 Tex. App. 490, 13 S. W. 778; *State v. Nine Justices*, 90 Tenn. 722, 18 S. W. 393.

There are authorities, however, that hold that such a law is local and special, among which are: *McGregor v. Baylies*, 19 Iowa, 43; *Huber v. People*, 49 N. Y. 132. We prefer, however, not to decide at this time whether an act creating a court of the character here involved is local or special, for this cause has been advance upon the docket and an early hearing given, in order to expedite a decision; and this court, with the great volume of business now passing upon it for attention, has not been able to thoroughly examine all the authorities bearing upon such question under other Constitutions with provisions relative to the power of the Legislature to create courts similar to the provisions of the Constitution of this state, nor to consider fully the force of said provisions of our Constitution in their relation to the other provisions of the Constitution. If we assume, without deciding, that this act, in so far as it creates a court with its territorial jurisdiction confined to one county having a population not greater or unlike other counties of the state, is to that extent a local law, still this act can and should be sustained; and we

therefore proceed in our consideration of the questions raised upon the hypothesis that said act is to this extent local.

It is well-settled doctrine that Legislatures· may enact local or special laws in the absence of constitutional inhibitions against such legislation. Sutherland on Statutory Construction, § 192. It is plain that there is no specific inhibition in the Constitution of this state against the creation of courts inferior to the Supreme Court by local or special acts; and the power of the Legislature with respect thereto is without limitation, except as limited by the general provisions of section 59, art. 5, *supra*. That section requires that no special or local act shall be enacted upon any subject where a general act can be made to apply; and, acting under this provision, no court should be created by special or local act, if the wants and needs of the state can be supplied by general law applicable thereto. But the overwhelming weight of decided cases is that the final determination of whether a general law can be made applicable is for the Legislature, and that the decision of the Legislature upon such question is conclusive upon the court. Sutherland, Statutory Const. § 190, and the authorities there cited. There is not an entire absence of authority holding the contrary to this rule, and strong reasons have been given to support same. That the majority rule in its application has not proven satisfactory in many instances is a matter of legislative history; and many of the states have sought to limit further the powers of the Legislature in relation to local and special legislation by inserting in the more recent Constitutions provisions prohibiting such legislation upon specific subjects; and some states, as has been done in Kansas and Missouri in their latest Constitutions, have declared that when a general law is applicable shall be a question for judicial determination; but we do not deem it necessary or proper to weigh here the reasons that have been given to support respectively the rule adopted by the majority of the courts and the rule adopted by the minority, for the Organic Act of Oklahoma Territory contained a provision similar to section 59, *supra,* and the Supreme Court of the ter-

ritory, in applying that provision to legislation by the territorial Legislature, adopted the rule supported by the weight of authority (*Johnson v. Mocabee,* 1 Okla. 204, 32 Pac. 336; *Addington et al. v. Canfield et al.,* 11 Okla. 204, 66 Pac. 355); and the Supreme Court of the United States, in *Guthrie National Bank v. Guthrie,* 173 U. S. 528, 19 Sup. Ct. 513, 43 L. Ed. 796, in discussing that provision of the Organic Act, said:

"Whether a general law can be made applicable to the subject-matter in regard to which a special law is enacted by a territorial Legislature is a matter which we think rests in the judgment of the Legislature itself. (Citing authorities.) That body is specially prohibited from passing any local or special law in regard to certain subjects enumerated in the act. Outside and beyond that limitation is the provision above mentioned, and whether or not a general law can be made applicable to the subjects is a matter which is confided to the judgment of the Legislature."

It may be presumed that the framers of the Constitution, when they inserted section 59, *supra,* had knowledge of the construction that had been given by the territorial Supreme Court and the federal Supreme Court to a similar provision in the Organic Act; and that the same construction had been given to similar provisions by the decided weight of authorities from the various state courts; and, had the framers of the Constitution and the people adopting it desired to make the question of when a general law is applicable one for judicial determination, they would have done so by a specific provision in the Constitution, as was done in Kansas and Missouri.

Section 46, art. 5, of the Constitution, provides:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: (a) * * * (b) Regulating the affairs of counties, cities, towns wards, or school districts. * * * (m) Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts. * * * (o) Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or

providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate."

It has been suggested that the provisions of this section do not limit the legislative power as to the subject-matters upon which local or special legislation may be enacted, but that the clause, "except as otherwise provided in this Constitution," has the effect to require that local or special acts upon the subjects named in this section may be enacted only in pursuance of the procedure prescribed by section 32, art. 5, requiring publication of notice and proof thereof. We cannot concur in this construction, for to give to this section this meaning would render it without any force whatever. By section 32, no special or local law upon any subject whatever can be enacted until notice of its intended introduction has been given as required by that section and proof thereof filed with the Secretary of State. This section in its comprehensive terms would, without additional provisions, include every act upon any of the subjects specified in section 46. Such a construction should not be adopted, except upon strong reason; for it is not to be presumed that this section was added for no purpose.

. Without the introductory clause of section 46, subsection "b" thereof would prohibit all local or special laws regulating the affairs of county or school districts; but section 20 of the Schedule to the Constitution provides that the Legislature shall by general or special or local law provide for the equitable division of the property, assets, and liabilities of any county existing in the territory of Oklahoma between such county and any new county or counties created in whole or in part out of the territory of such county; and section 21 of the same article authorizes certain local acts to be passed relative to the division of the assets of Day county; and section 32 authorizes the enactment of special and local laws for the equitable division of property of certain school districts.

We think it was intended by the language of section 46, "ex-

cept as otherwise provided in this Constitution," to save from
the operation of said section the specific cases in which local legis-
lation is authorized by other provisions of the Constitution, as is
done in sections 20, 21 and 32 of the Schedule to the Constitution,
that would otherwise fall within the subjects of legislation specif-
ically named in section 46, and thereby prevent any conflict in
the different provisions of the Constitution. *Smith v. Grayson
County*, 18 Tex. Civ. App. 153, 44 S. W. 921.

It is next urged that the act regulates, in violation of said
subsection "b" of said section 46, the affairs of Custer county
and of the city of Clinton, because the act provides for the pay-
ment to the judge of the court the same salary in the same man-
ner as is paid to the judge of the county court; and requires
the city of Clinton to furnish free of cost a suitable building for
the court. If this contention were sound, it would not follow
that the entire act would have to be struck down. The fact that
a part of a statute is unconstitutional does not authorize a court
to declare the remainder void, unless the invalid part is so con-
nected in subject-matter or in meaning that it cannot be pre-
sumed that the Legislature would have passed the act without
the invalid part. Cooley's Constitutional Limitations, p. 247.
We do not think it can be inferred from the provisions of this act
that but for the provisions fixing the salary and providing for
quarters for the court it would not have been passed. Nor do
we think the contention that these provisions are invalid can be
sustained. The Legislature has power to create any court inferior
to the Supreme Court by special act, when in its judgment a
general law will not apply. This general grant of power carries
with it every essential incident to the exercise of that power. A
court must have a building in which to hold its sessions. It must
have a judge to preside over it, and such judge must be com-
pensated. Discussing a similar question, the court, in *Board,
etc., v. Albright*, 168 Ind. 564, 81 N. E. 578, said:

"It is contended that the requirement of section 19 (Acts
1907, p. 7) concerning the duty of the commissioners to furnish

a place for the holding of court amounts to an attempted regulation of county business in violation of section 22, art. 4, of the Constitution. It has been many times decided that under section 1, art. 7, of the Constitution the Legislature has power to create other courts by special act, and, while we are by no means to be understood as affirming that the General Assembly, in the exercise of a particular grant of power, may violate a prohibition of the Constitution which is found in some other section, yet we regard it as settled that essential incidents of the grant belong with the principal power. (Citing authorities.) Under section 1, art. 7, it is for the Legislature to determine what 'other' courts it will create, and as it enjoys this power unhampered by section 22 of the legislative article, it need not enact a general law, under which courts might spring into existence where not needed, but can ordain the existence of a court in a particular county, and, that its arm may not be shortened in the consummation of its undoubted power, the authority must be accorded to the Legislature to annex necessary incidents, such as provisions for the housing of the court, for the procuring of records, etc."

And the same court, discussing a similar provision of the Constitution of that state and the nature of township or county business referred to as to which the Legislature was prohibited from enacting local laws, in *Mount v. State ex rel. Richey*, 90 Ind. 29, 46 Am. Rep. 192, said:

"Township business cannot be regulated by special or local laws, but a law requiring reimbursement to an officer is not a regulation affecting township business; it is an act granting special relief in a particular case. The term 'business,' as employed in the Constitution, does not apply to acts granting relief in particular and extraordinary cases. The term 'business,' when applied to a public corporation, signifies the conduct of the usual affairs of the corporation, and the conduct of such affairs as commonly engage the attention of township and county officers. It does not mean the performance of an act which can be done only in a particular case and by authority of a special law."

Although the territorial jurisdiction of the superior court of Custer county is confined to the limits of a county, it is not a county court nor a part of the county government. It does not deal with the business affairs of the county; its functions are purely

judicial. It exercises one of the high powers of the state government, to wit, judicial power, and, owing to the extent of its jurisdiction, is, as a court of original jurisdiction, one of high character. It has original jurisdiction in all offenses against the state committed within its territorial jurisdiction and of all civil causes, except private matters. Its jurisdiction of subject-matter is more comprehensive than that of the district courts. The mere fact that its presiding officer is selected by a single county and is paid by that county does not make such officer a county officer. Some of the members of the House of Representatives and of the State Senate are elected by the voters of a single county; and, in the redistricting of this state for judicial purposes, it may occur that some of the district courts of the state will be confined to districts coextensive with the boundaries of a single county; but we think it could not be contended with any show of reason that such facts would render those respective officers county officers. The character of this office is to be determined by the nature of the powers which it contains and the duties it imposes. Acting under a constitutional provision very similar to section 1, art. 7, *supra*, the Legislature of Kansas in 1899 passed an act creating two city courts in the city of Topeka township. The validity of that act was questioned upon the ground that the act created township officers to continue for more than one year in violation of a constitutional provision of that state; but it was held, in *Chesney v. McClintock*, 61 Kan. 94, 58 Pac. 993, that the officers of said courts were not township officers. The court in the opinion, referring to this contention, said:

"The infirmity of this argument lies in the fact that the law in question did not create a township office. It created a tribunal designated 'the court of Topeka.' This the Legislature had authority to do, under section 1, article 3, of the Constitution. It provided by law for a court inferior to the Supreme Court. Whatever name might have been given to it, it is a judicial tribunal, created within the limits of the city of Topeka, which it was within the discretion of the Legislature to establish."

See, also, *Daughtry v. State*, 115 Ga. 819, 42 S. E. 248.

In *State ex rel. v. Sullivan*, 67 Minn. 379, 69 N. W. 1094, an act creating municipal courts in incorporated cities having a population less than 5,000 was considered and held not to regulate the affairs of cities within the meaning of a constitutional provision of that state prohibiting special legislation on certain subjects. In the opinion it was said:

"It will be observed that the powers and duties of the courts provided for are purely and exclusively judicial. They have neither administrative nor legislative powers in the affairs of the municipalities. It is true that the judge is chosen by the electors of the city, and the court is to be held within the limits of the city, and is doubtless designed for the special convenience of its inhabitants; but this does not, in any proper sense, render the judge a municipal officer of the city, or the court a department of its municipal government. Its jurisdiction, within the limitations prescribed, is general, and not confined to the city or to the inhabitants of the city. Although inferior in rank, it is as much a court of the state as is the district or probate court. The fact that it is given exclusive jurisdiction of criminal cases under either state laws or city ordinances, arising or triable within the city, or that its judge is made the 'chief magistrate' of the city, does not affect the character of the court, or make it a department of the municipal government. It is one of the courts, inferior to the Supreme Court, which the Legislature is authorized to establish by section 1, art. 6, of the Constitution of the state."

Section 1 of the act provides that the superior court of Custer county "shall be a court of record and shall have and exercise the same jurisdiction as provided by law for other superior courts of this state." This does not violate subsection "b" of section 46, art. 5, *supra,* prohibiting special legislation regulating the jurisdiction of courts. The purpose of that provision of the Constitution is to secure uniformity of jurisdiction in courts of the same class or grade. The Constitution provides for two classes of courts: Those specifically created by the Constitution and those authorized to be created by legislative enactment. Those created by the provisions of the Constitution are divided into five classes, to wit, the Supreme Court, the district courts, county courts,

municipal courts and courts of justices of the peace. It was intended by subsection "b" of section 46, *supra,* to prohibit the establishment by local or special legislation different jurisdiction and different rules of practice in the different courts of the same grade or class. By act of the Legislature approved March 6, 1909 (Sess. Laws 1909, p. 181), a class of legislative courts was established, known as the "superior courts," with jurisdiction concurrent in all matters with the district courts and concurrent with county courts in all civil and criminal matters, excepting probate matters. That act establishes this class of courts only in certain counties having a specified population and a city therein of a specified population. The act now under consideration establishes another of said courts in a county of different population; but in so far as it confers jurisdiction upon this court, it only makes the general law applying to other superior courts applicable to the court created by this act; and the act does not undertake, we think, within the meaning of said prohibitive provision of the Constitution, to regulate the jurisdiction of courts; nor does it operate to destroy their uniformity of jurisdiction.

The Constitution of Indiana prohibits enactment of local legislation providing for the punishment of crimes and misdemeanors, for change of venue in civil cases, and for regulating county and township business. In *Woods v. McCay,* 144 Ind. 316, 43 N. E. 269, 33 L. R. A. 97, an act creating a superior court for three designated counties, with jurisdiction concurrent with the circuit court of said counties, was held not in violation of said provisions of that state's Constitution.

"A constitutional provision or a statute must be adhered to and enforced, whether it works well or ill in practice; but this constitutional inhibition against special legislation must receive a reasonable and practical construction, and not be given a strained one, so as to tie the hands of the Legislature beyond the intention of the people, as fairly indicated by its terms. Moreover, a cardinal rule in all such cases is that every reasonable doubt must be resolved in favor of the constitutionality of a legislative act. Special circumstances frequently create a necessity for the establish-

ment of a local court in one locality which does not exist in others." (*State ex rel. v. Sullivan, supra.*)

We conclude that the act creating the superior court of Custer county, in so far as its validity has been questioned in this proceeding, is valid.

The admission and rejection of certain testimony are made the basis of several assignments of error urged. To these assignments plaintiffs object that defendant has failed to set out in its brief the testimony to the admission or rejection of which it objects. This objection of plaintiffs cannot be sustained. Rule 25 (20 Okla. xii, 95 Pac. viii) does not require that the testimony admitted or rejected shall be set out in the brief *in totidem verbis,* but that the person complaining shall set out only the full substance of such testimony. There has been a substantial compliance with the rule in this case.

Plaintiffs seek to fix liability upon defendant for their services rendered to the defendant's wounded employee by showing that defendant's manager at Clinton sent for them and requested that they render the services. Over defendant's objection, plaintiffs were permitted to testify that the person who called for them at the time of the accident stated that he had been sent by the president or manager of defendant. There is an entire absence of any other evidence in the record to show that the person who made this statement was in any way the agent of the oil mill or had been sent by its manager. Statements made in the absence of defendant by this person, who is not shown to be defendant's agent, cannot bind defendant, and are objectionable as hearsay testimony. The best evidence as to who sent the messenger for plaintiffs would have been the messenger's testimony.

Defendant's defense was that its manager had not ordered the services of plaintiffs; and that, if he had done so, he was without authority to bind defendant in the premises. Defendant offered to prove by the manager that he was without such authority; but his testimony relative thereto was rejected by the court. That such testimony was competent seems plain; it bears directly

Vol. 28—19.

upon the issues of defense made by defendant's answer. The burden was upon plaintiffs, under the issues formed by the pleadings, not only to show that defendant's manager requested them to render the services for which they seek to recover, but also that he was acting within his authority as the agent of defendant; and evidence by defendant's officer who knew his authority was competent to contradict evidence offered by plaintiffs in support of this issue.

Plaintiffs were also permitted to testify in their own behalf as to a conversation had between them and one Morrison, in which Morrison made statements tending to show the admission by the company of its liability to plaintiffs for their claim. They testified that Morrison had asked them if they were still looking to the company, and, upon being told that they were, said to them that they had better see the Oil Mill Company about standing for any more of the bill; that the company had some money on hand that they expected to pay on plaintiffs' bill, but, before plaintiffs did anything else, they had better see the company, as their bill was much more than the company was expecting anyhow. Morrison was an employee of the company, but the record is silent as to what his authority was. Admissions of an agent, in order to be admissible against the principal, must be made as agent, and while he is acting for the principal within his authority; and it must first be shown by competent evidence that such admissions were made in and as a part of the agent's performance of his duties and within the scope of his authority. The rule is stated by Mr. Justice Valentine in *Swenson x. Aultman,* 14 Kan. 273, as follows:

"It is a general rule that the declarations of an agent, in order to bind his principal. must not only come within the scope of the agent's authority, but they must also be made by the agent while he is transacting his principal's business, and be connected therewith as a part of the *res gestae.*"

All the essential elements of this rule rendering the statements of Morrison admissible are lacking in the record. The in-

competent evidence admitted was prejudicial to defendant. The principral controversy in this case revolves about the issue of fact whether defendant's manager employed plaintiffs or requested their services for the wounded employee. Any statement by Morrison, one of defendant's employees, to the effect that the company's officers recognized its liability in the premises for a portion of the bill, was calculated to weaken the testimony of defendant's manager, denying that he had made any contract with plaintiffs or requested them to render any service, and was calculated to influence the jury in finding their verdict for plaintiffs.

For the errors in admitting the incompetent testimony, the judgment of the trial court must be reversed, and the cause remanded.

All the Justices concur.