## ROFF OIL & COTTON CO. v. KING.

No. 3857.   Opinion Filed April 13, 1915.

(148 Pac. 90.)

1. CORPORATIONS—"Residence." The residence of a corporation is the place where the governing power of the corporation is exercised, and not some other place where its business is done.

2. CORPORATIONS—County Courts—Transfer of Causes—Foreign Corporation. Where a foreign corporation has its principal place of business in Texas, but has an office in Roff, in Pontotoc county, in this state, where it does some of its business, it is not entitled to have a case transferred from Ada to Roff, under the provisions of section 2, c. 32, Session Laws 1910-11, which provides that in actions brought in the county court of Pontotoc county a defendant, on motion, shall have the case transferred to the county court held nearest the residence of the defendant.

3. MASTER. AND SERVANT—Principal and Agent—Employment of Physician—Notification—Question for Jury. As a general rule, a corporation is not required to furnish medical attention to an employee injured while engaged in its service, and, nothng else appearing, an agent cannot bind the employer, unless it appears that such authority is in the scope of his agency, but where an agent, in charge of the business of the employer, although of limited authority, does employ a doctor for an in-

jured employee, and the employer is notified within a reasonable time by the agent that such doctor is in charge of the case, and makes no objection, and it further appears that the agent purchased medicine for the injured man, which was paid for by the employer, this is evidence to go to the jury of the notification of the employment.

4.   **APPEAL AND ERROR—Assignment of Error—Brief.** Where error is assigned to the charge of the court, but this question is not briefed by the plaintiff in error, this court will not consider such assignment of error, but will treat it as waived.

(Syllabus by Devereaux, C.)

*Error from County Court, Pontotoc County;*

*Conway O. Barton, Judge.*

Action by R. F. King against the Roff Oil & Cotton Company. Judgment for plaintiff, and defendant brings error. Affirmed.

DEVEREAUX, C. This was an action brought originally in the county court of Pontotoc county by the defendant in error to recover for services rendered in attending as a physician one of the employees of the Roff Oil & Cotton Company, who was injured while in its services. The petition states, in substance, that the plaintiff is a resident of Ada, Pontotoc county, and a practicing physician, and that the defendant is a corporation organized under the laws of the state of Texas, with its place of business in Roff and Ada, in Pontotoc county; that on or about the 3d day of November, 1910, one Harry Parks, one of the defendant's employees, was injured in the city of Ada while discharging his duties to the plaintiff in error; and that the plaintiff in error employed the said King as physician to dress and treat the wounds of said Parks, and King performed services at the request of the plaintiff in error of the value of $301. An itemized statement of the account is attached to the petition.

The answer of the plaintiff in error admits the jurisdictional facts set out in the petition, and contains a general denial of the

allegations of the petition, except the jurisdictional facts. The plaintiff in error also specifically denies that it ever employed the defendant in error to treat the wounds of said Harry Parks, or to perform any medical services upon the said Parks for it, but that, if any services were performed by the defendant in error, the same were performed by him without the knowledge and consent of the plaintiff in error, and without any agreement or understanding.

On the 10th day of October, 1911, the plaintiff in error filed its affidavit setting up that the plaintiff in error is a corporation located at Roff, in Pontotoc county, and engaged in the manufacture and sale of cotton seed products, and that its office and place of business is in Roff; that it has no place of business, nor does it own any property, in Pontotoc county, outside of what is known as the Roff district of the county court of Pontotoc county, and that the location of said corporation was nearer to Roff than to any other court town in Pontotoc county. Based on this affidavit filed under the provisions of the County Court Act of Pontotoc county, hereinafter set out in full, the plaintiff in error moved to transfer this cause to Roff, which motion was overruled and exceptions saved.

The evidence in this case shows that Harry Parks was one of the laborers performing work for the plaintiff in error, and that on the 3d day of November, 1910, he was injured by having his arm caught in the gin of plaintiff in error, by which serious injuries were inflicted, not only upon his arm, but other parts of his person. One T. Rogers testified for the defendant in error that he was in the employ of the plaintiff in error at Roff as officeman; that his duties were to weigh cotton, collect for ginning, write checks for seed cotton, and generally to transact the business of the plaintiff in error at Roff. And the evidence also shows that, when supplies or repairs were needed at the plant at Roff, the witness made requisition on the main office in Texas.

Form No. 2

and the supplies were forwarded; that on the day of the accident the witness Rogers first carried the injured man to the office of the defendant in error, but, not finding him, carried Parks to one Dr. Vaden, who administered first aid. On the return of Dr. King to his office he took charge of the case, and three or four days after the accident the said Rogers telephoned to the general manager of the company in Texas, who asked him who was the physician in charge, and he informed him that Dr. King, the defendant in error, was, but that in this conversation nothing was said about who should pay the bills. It also appears that Dr. Vaden, who rendered first aid services, presented his bill to the company, but the record is silent as to whether the bill was paid or not, although it does show that there was a dispute over the amount; the witness testifying that in the conversation with the general manager in regard to Dr. Vaden's bill the general manager, Miller, stated that he thought that Dr. King was the physician, and told the witness not to allow Dr. Vaden's bill, as he thought it was too much. There was also evidence admitted over the objection of the plaintiff in error that the witness Rogers, in addition to getting Dr. King to treat the injured man, purchased medicine from one Mr. Holman, the proprietor of the Ada Drug Company, which bill was paid by the plaintiff in error. The witness, however, testified that, when he asked the general manager in regard to the payment of this bill, he informed him that he (the witness) had guaranteed the money if the company would not pay the bill. The plaintiff in error also notified the Ada Drug Company to refuse Parks any further credit, but there is no evidence in the record that this letter, which was dated March 9, 1911, was ever communicated to the defendant in error. The defendant in error, as a witness in his own behalf, testified that witness Rogers employed him to treat Parks, and told him to go ahead. This witness also testified that on the first day that he was attending physician that the witness Rogers informed him that he had called up the main office of the company, and

that the company had instructed Rogers to go ahead and attend to the injured man, and that it was all right. It also appears that on the 1st of March, and after all of the services were performed, except a small part, the defendant in error mailed his bill to the company, and that prior to that time, and about a month after he begun attending the injured man, he rendered a bill to the Roff Oil & Cotton Company, by sending same to Rogers, but witness could not say whether Rogers ever sent this bill to the plaintiff in error or not. In Rogers' testimony, when recalled on this point, he failed to remember whether he had ever mailed the bill to the plaintiff or not; that he had searched for the letter, but could not find it. At the close of the plaintiff's evidence defendant below interposed a demurrer thereto because it did not establish sufficient facts to constitute a cause of action against the defendant, and for the further reason that it was not shown that Rogers had any authority to contract for the services for which the action was brought, or that they were in the apparent scope of his authority. This demurrer was overruled, and exception saved.

Mr. Miller, a witness for the defendant, testified that he lived in Sherman, Tex., and was in charge of the general offices of the company and acting as general manager for the defendant, and that the witness Rogers had charge of the office in Roff and did the weighing and some repair work. This witness denied that he had ever instructed Mr. Rogers, in case of an accident, to employ a physician or to contract for medical services or drugs for the plaintiff in error, and denied that he could recall receiving a report from Mr. Rogers regarding the accident to Mr. Parks. This witness also testified that some little time after the accident he received a report from Mr. Rogers stating that Parks was in bad shape, and had to have some medicines, which Rogers had purchased for him, and wanted to know if the company would be responsible for either the doctor's bill or the medicines; that witness told Rogers, "No," but that he would

see that medicines purchased by Rogers on his personal guaranty were paid for. This witness, however, testified that he presumed that Rogers had told him that Dr. King was attending Parks. As above stated, there is no evidence in the record as to whether the Vaden bill was paid or not, although there is evidence of the dispute as to the amount.

There was a verdict for the plaintiff for $200, upon which there was a judgment, and a motion for new trial regularly filed in due time and overruled, and the plaintiff in error brings error upon the following assignments of error:

"First. That the court erred in overruling the plaintiff in error's motion to transfer the case to Roff for trial.

"Second. That the court erred in overruling the demurrer to the evidence.

"Third. That the court erred in admitting incompetent and immaterial testimony prejudicial to the plaintiff in error, particularly the statements of the witness Rogers as to the scope of his authority as agent of the plaintiff in error, and the evidence of Mr. Holman as to certain drug bills which were paid by the company for drugs used by Parks.

"Fourth. That the court erred in refusing to admit competent evidence offered by the plaintiff in error.

"Fifth. That the court erred in overruling plaintiff's motion for an instructed verdict.

"Sixth. That the verdict of the jury was not supported by the evidence.

"Seventh. That the court erred in overruling plaintiff in error's motion for a new trial.

"Eighth. That the judgment of the court was not supported by the evidence.

"Ninth. That the court erred in giving instruction No. 7, and also the plaintiff's requested instruction."

*Bullock & Kerr,* for plaintiff in error.

*King & Maxey* and *H. West,* for defendant in error.

DEVEREAUX, C. (after stating the facts as above.)   The first assignment was of the refusal of the court to transfer the trial from Ada to Roff, in Pontotoc county. This motion is based on the provisions of section 2, c. 32, Session Laws 1910-11, which provides:

"The courts herein provided for shall have concurrent jurisdiction over the entire county on matters coming before the county court of Pontotoc county, and upon application presented after reasonable notice, any action pending in said court at either place for holding county court in said county shall be transferred to or remain in the county court held nearest the residence of the defendant, or one of the defendants, in said action; provided, that in all criminal cases where the defendant is in jail, he shall be tried at the county seat."

Plaintiff in error cites no authority to support this contention.

Plaintiff in error, who moved for this transfer, is a foreign corporation, and its residence is in Texas, the state which created it. It is doing business, however, in Oklahoma, having an office in Roff. The statute provides for transfer to the county court held nearest the residence of the defendant. To say that this statute means nearest the place of business of the defendant would be interpolating words into the statute which we are not authorized to do. The clear object of the statute was that cause should be tried in Pontotoc county in the county court held nearest the residence of the defendant. If, for instance, a defendant resides in Ada, and is doing business in Roff, he could not claim a transfer to Roff because he did business there. The residence of a corporation, it has been frequently decided, is where its chief office is. See *Board of Councilmen v. Stone* (Ky.) 58 S. W. 373, *Jossey v. G. & A. Ry. Co.,* 102 Ga. 706, 28 S. E. 273, and *Grundy County v. Tennessee Coal, etc., Co.* 94 Tenn. 295, 29 S. W. 116, where the Supreme Court of Tennessee held that the residence of a corporation is the place where the governing power of the corporation is exercised, and

where those meet in council who have the right to control its affairs and prescribe what policy the corporation shall pursue, and not where the labor is performed in exercising the requirements of the corporation in transacting its business. See, also, *Galveston, etc., R. Co. v. Gonzales,* 151 U. S. 496, 14 Sup. Ct. 401, 38 L. Ed. 248.

To give the construction contended for by the plaintiff in error would be to read words into this statute which are not there, and we would have to say that the statute meant not only the "residence," but the "nearest place of business," of the defendant. This assignment of error is therefore overruled.

The second, fifth, sixth, and eighth assignments of error may be considered together, as they all raise the same question; that is, whether the plaintiff has introduced sufficient evidence to go to the jury in this case. The witness Rogers was the employee of the plaintiff in error at Roff and his duties were to purchase cotton, make repairs, and to apply for supplies or other things needed at the Roff office. This circumstance by itself did not make him such an agent as would authorize him to employ a physician to attend to an injured employee. We think the general rule is well settled that an employer is not ordinarily bound to provide medical attention for an injured employee, and hence such an agent as Rogers has no implied authority to contract in his name for such attention. 31 Cyc. 1399. But a different question is presented here. Dr. Vaden, it appears from the evidence, rendered first aid in the absence of Dr. King, who took charge of the case immediately upon his return, at the request of Rogers, who, within three or four days, notified the plaintiff in error that Dr. King had charge of the case. It is true that Rogers testifies that he did not tell the plaintiff in error that contracted in their name for Dr. King's compensation, but the plaintiff in error had notice that Dr. King was attending their injured employee. In *Sevier v. Birmingham, etc., R. Co.,* 92 Ala. 258, 9 South, 405, the facts were that an employee of the

railroad was injured while in the discharge of his duty, and a physician was employed by the conductor to attend to him. There was no evidence in that case of the ratification by the proper authorities of the railroad, or that the railroad was informed of the fact that the physician was rendering services to its employee, but at page 262 of 92 Ala., at page 406 of 9 South., the court uses this language:

"Unquestionably, the general superintendent may ratify the conductor's unauthorized employment, and, upon notice of the injury and the employment of the physician, the general superintendent, in order to avoid responsibility, should dissent, and notify plaintiff that the company would not be responsible. But this duty does not arise, and there can be no ratification, unless the superintendent is informed of the facts and circumstances of the employment of plaintiff. There is no evidence that he had any knowledge or notice thereof until after the services were rendered. (44 Am. & Eng. R. R. Cas. 464.)"

In *Pacific Railroad Co. v. Thomas,* 19 Kan. 256, an employee of the railroad company was injured, and a physician was employed by a master mechanic to attend him. The physician performed the services, looking to the railroad company for his pay, and made out a bill against the railroad company and inclosed it in a letter, which stated his employment by the master mechanic and asked that the company pay the bill. No attention was paid by the general superintendent to this letter. It was held by the court that these were facts sufficient to uphold the finding by the jury that the division superintendent ratified the employment of the physician by the master mechanic. The facts of this case are somewhat similar to the case at bar. In the Thomas Case the physician forwarded his bill to the superintendent, to which the superintendent paid no attention, and the court held that this was sufficient evidence of the ratification to go to the jury. In the case at bar, before the services were completed, although a considerable time had elapsed, the defendant in error sent his bill to the company, and prior to this time sent the bill to their agent at Roff, who testified that he

does not remember whether he ever forwarded the bill or not. But, at any rate, the evidence is clear that within a day or two after the services began the plaintiff in error was notified that the defendant in error was treating the case, but remained silent.

This case is distinguishable from the *Chickasha Cotton Oil Co. v. Lamb,* 28 Okla. 275, 114 Pac. 333, because in that case there was no evidence whatever that the Chickasha Cotton Oil Company had any knowledge that the physician was performing the services prior to the time of their completion. The only evidence in that case of agency (see 28 Okla. 289, 114 Pac. 333) was that the person calling the physician at the time of the accident stated that he had been sent by the president or manager of the defendant to employ him. There was no evidence that the superintending officer of the corporation knew that the defendant in error in that case had been employed or that the corporation kept silent after knowing such fact. The fact that Rogers was in charge of the office at Roff, that he communicated the fact that the defendant in error was the attending physician of the injured employee, that the company did pay for medicines for him, was some evidence to establish the agency, and, when there is evidence whether or not there is an agency it is a question for the jury. See *Port Huron, etc., Co. v. Ball,* 30 Okla. 11, 118 Pac. 393; *Mullen v. Thaxton,* 24 Okla. 643, 104 Pac. 359, *Allen v. Kenyon,* 30 Okla. 536, 119 Pac. 960; *Yukon Mill & Grain Co. v. Imperial Roller Mills Co.,* 34 Okla. 817, 127 Pac. 422; *Swazey v. Mfg. Co.,* 42 Conn. 556. These assignments are therefore not well taken.

The third assignment of error is that the court erred in admitting incompetent and immaterial testimony in allowing the witness Rogers to testify as to the scope of his authority as agent, and in the evidence of Mr. Holman as to certain bills for medicines supplied to Parks and paid for by the plaintiff in error. While it is true that the fact of agency cannot be proved by the

hearsay declarations of the agent, yet the agent himself, while on the stand, can testify as to his agency and as to the scope of his employment. The payment of the drug bills was some evidence to be considered by the jury as to the liability which the plaintiff in error had assumed in regard to the injured man. The agent, Rogers, who employed the defendant in error, also bought the medicine for him, and this fact was some evidence to go to the jury in establishing the agency.

The fourth assignment of error has been waived, and the ninth assignment of error, in regard to the court's charge to the jury, has not been briefed by the plaintiff in error, and is therefore not considered.

We therefore recommend that the judgment below be affirmed.

By the Court: It is so ordered.