## OKLAHOMA PORTLAND CEMENT CO. v. DOW.

No. 12433—Opinion Filed March 4, 1924.

**1. Master and Servant—Death of Servant from Explosives—Negligence — Liability —Proximate Cause—Instructions.**

It is the duty of persons using dynamite in the prosecution of their business to exercise such reasonable supervision of the management and use thereof as would result in the observance of the utmost care on the part of such persons' employes using such instrumentalities for the safety of others, and such persons, having entrusted such dangerous agency and instrumentality to their servants, cannot shift the responsibility with reference to the custody and use thereof and thus escape liability. An obligation abides with such persons to use a degree of care commensurate with the dangerous character of the agency or instrumentality, and a failure to discharge this duty imposes the liability of making reparation for any injury that may ensue as a result thereof.

Record examined, and held, that the proximate cause of dynamite explosion was a question of fact for jury, and that record discloses sufficient evidence to sustain finding of liability.

Instructions examined, and held, that same properly state the law as announced in case of Lusk v. Phelps, 71 Oklahoma, 175 Pac. 756.

**2. Same—Excessive Damages—Death of Minor Son—Remittitur.**

Where a minor twenty years of age is killed by a dynamite explosion, which is determined to have been proximately caused by negligence of employer, and where the record discloses that the earning capacity of said minor was not over forty or fifty dollars per month, and discloses, further, a limited amount of contribution to his parent's support and a limited degree of dependency on the part of the parent, a verdict in the sum of seven thousand dollars is excessive.

Held, that amount of recovery should be reduced to four thousand dollars and plaintiff is required to file a remittitur for all in excess of said sum.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Blaine County; Redmond S. Cole, Assigned Judge.

Action by Henry L. Dow against the Oklahoma Portland Cement Company. Judgment for plaintiff, and defendant brings error. Modified and affirmed.

J. F. McKeel and Robert S. Kerr, for plaintiff in error.

Seymour Foose and R. C. Brown, for defendant in error.

Opinion by LYONS, C. The parties will be referred to as in the court below. The plaintiff sued defendant to recover damages sustained by reason of the death of Willis A. Dow, a minor. Plaintiff is next of kin of said Willis A. Dow, who died on August 2, 1919, intestate, unmarried, and without issue, leaving a father, plaintiff herein, as next of kin; his mother having died prior to August 2, 1919. The defendant is a corporation engaged in the quarrying and

mining of gypsum rock and the grinding and manufacturing thereof into plaster and plaster products for commercial purposes.

It is claimed that on August 2, 1919, Willis A. Dow was a minor of the age of 20 years; that at said time he was an employe of the defendant at its mine at Ideal, Okla., and that he had been placed at work in the capacity of a helper to the quarry foreman who superintended and had charge of the blasting and dynamiting of gypsum rock in said quarry. Between the hours of eight and eight-thirty a. m., on August 2, 1919, Willis A. Dow received injuries from an explosion of dynamite and on that same day, as a result of such injuries, his death ensued.

The plaintiff claims that the defendant was negligent in furnishing to Willis A. Dow dynamite and caps which had become defective by reason of improper storage, and that by reason of the defective condition of this material a stick of dynamite which the deceased was holding in his hand with the fuse lighted, preparatory to dropping the same into the hole, exploded prematurely and instantaneously, and that this explosion caused a further explosion of other dynamite and caps, causing the accident which had a fatal result.

The defendant contended at the trial that the accident was caused by the negligence of Willis A. Dow by throwing a pair of pliers into a box containing dynamite and caps, which was the proximate cause of the accident, and that therefore plaintiff cannot recover in this action. However, the proximate cause was an issue of fact which was submitted to the jury under appropriate instructions, and there is nothing in the record which authorizes us to disturb the verdict on showing made as to this contention. Defendant's contention on this ground, therefore, to the effect that the verdict is not supported by the evidence cannot be sustained.

Some question is made as to the credibility of an important witness for plaintiff. The written statement made by the witness (defendant's foreman) at the behest of his employers, conflicted in some essential particulars with the testimony thereafter given in the foreman's deposition. This matter is suggested as a ground for reversal. This conflict and the question of credibility was a question for the jury, and cannot be reviewed here. The court instructed the jury properly as to the credibility of witnesses, and there is nothing from which it appears that the jury disregarded the court's instructions.

The defendant's contention, asserted under various assignments of error, is that there is no legal liability under the rule announced in cases such a Shea v. Wellington (Mass.) 40 N. E. 173, where the following rule is announced:

"1. In an action against a quarryman by an employe for injuries caused by the defective condition of an 'exploder' used by plaintiff in discharging a dynamite blast, it appeared that the exploders were manufactured by one of the largest manufacturers in the country; that they were packed in boxes, ready for use by the quarryman; that in order to inspect them it would have been necessary to employ an expert at great expense. Held, that defendant was not required to have the exploders inspected before delivering them to his employes for use.

"2. An 'exploder' used to discharge dynamite blasts, and composed of a copper cap filled with a high explosive, which is instantly consumed in making the explosion, is not a part of the 'way, works, or machinery' of a quarry within the statute, so as to render the quarryman liable for injuries to his employes arising from defects in its construction.

"3. Since the quarryman was not required to inspect the 'exploders,' negligence of the superintendent of the quarry, in inspecting them does not render the quarryman liable for injuries due to defect therein, where it is not shown that the quarryman was aware that the superintendent was accustomed to inspect them, or that such inspection was a part of the work, he, as superintendent, was hired to do."

Defendant's contention is that under the foregoing and similar decisions, the defendant having purchased the fuse, caps, and dynamite from standard manufacturers, could not be liable for any defect in such material, which may have caused a premature explosion. However, this is not the rule in this jurisdiction. This controversy must be ruled by the case of Lusk v. Phelps, 71 Oklahoma, 175 Pac. 756, where the rule is stated as follows:

"It was the duty of defendants when using dynamite in the prosecution of their business to exercise such reasonable supervision over the management and use thereof as would result in the observance of the utmost care on the part of the defendant's employes, using such instrumentality for the safety of others, and having intrusted such dangerous agency and instrumentality to their servants, they cannot shift this responsibility with reference to the custody and use thereof to the servants, and thus escape liability, for no one has a right to put in operation forces calculated to endanger human life and property without placing them under the control of a competent and ever active superintending intelligence, and whether he undertakes the use, himself or

delegates the use thereof to another, the obligation abides with him to use a degree of care commensurate with the dangerous character of the agency or instrumentality, and a failure to discharge this duty in either case imposes the corresponding liability of making reparation for any injury that may ensue as a result thereof. Barmore v. Vicksburg S & R. Co., 85 Miss. 426, 98 South. 210, 70 L. R. A. 627, 2 Ann. Cas. 594; Rush v. Spokane Falls & N. R. Co., 25 Wash. 501, 63 Pac. 500; Railway Co. v. Shields, 47 Ohio St. 387, 24 N E. 658; Tissue v. Railroad Co., 112 Pa. 91, 3 Atl. 667, 56 Am. Rep. 310; Merchel v. L. & N. R. Co., 85 S. W. 710, 27 Ky. Law Rep. 465; Carter v. Towne, 98 Mass. 567, 96 Am. Dec. 682; Cleveland, C. & C. R. Co. v. Keary, 3 Ohio St. 201. And this rule obtains when the injured person was engaged in the service of a master in the same common employment with a person who put the forces in operation where the injury resulted from the negligence and carelessness of that other employe. Rush v. Spokane Falls & N. H. R. Co., supra; Asbestos & Asbestos Co v. Durand, 30 Can. (S. C.) 285. * * *"

"It was the duty of defendants when intrusting the use of dangerous agencies and instrumentalities to servants to see that the servants employed by them possessed such qualifications mentally, morally and physically as would enable them to perform their duties with that degree of skill and experience required by the nature of the employment and without exposing themselves and their coemployes to a greater danger than the work necessarily entailed in the due and careful prosecution thereof, and for a failure upon their part to use ordinary care when selecting servants to whom the use of such dangerous agencies and instrumentalities were intrusted to see that such servants possessed the requisite qualifications, they would be liable for any injuries that might result as a proximate result of such negligence. Neeley v. Southwestern Cotton Oil Co., 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145; Choctaw Electric Co. v. Clark, 28 Okla. 403, 114 Pac. 730; Dewey Portland Cement Co. v. Blunt, 38 Okla. 182, 132 Pac. 659; C., R. I. & P. Ry. Co. v. Duran, 38 Okla. 719, 134 Pac. 876; 3 Labatt, Master & Servant, sec. 1079, et sep. note to Smith v. St. L. & S. F. Ry. Co., 48 L. R. A. 368.

"If after a servant has been employed, it appears that he is unfitted for his duties, whether by reason of want of skill or other reasons, and this fact is actually or constructively made known to the master, then it is negligence to retain him in the performance of those duties for which he is unfitted. 3 Labatt, Master and Servant, sec. 1079."

Ruling Case Law lays down the rule further:

"Care Required of Master Generally—In the employment of inherently dangerous agencies, such as power or other explosives, it is the duty of the master to exercise a degree of care for the safety of the servant commensurate with the danger reasonably to be anticipated. This rule is especially applicable to the plan or method of operation deliberately adopted by the master or his representatives. The master is liable if the injury to the servant is the result of a defective system not adequately protecting the workmen at the time of the explosion; and the jury must determine whether or not a master is negligent in setting off blasts." 11 R. C. L. 691.

"Since blasting power and other high power explosives of modern invention are liable to accidental ignition with destructive consequences, even where apparently reasonable care is exercised to prevent an occurrence, if there is lack of reasonable care in storing them too near the servant's place of work, such negligence is not necessarily excused by the exercise of care in other respects." 11 R. C. L. 691, 692.

"The employment of a young and inexperienced person to handle high explosives is no doubt a negligent act." 11 R. C. L. 696.

We believe that under the rule adopted by this court in the case of Lusk v. Phelps, supra, the duty of the defendant using dangerous agencies such as dynamite, requires such supervision of the management and use thereof as would result in the observance of the utmost care on the part of the defendant's employes using such instrumentalities for the safety of others, and that defendant cannot shift this responsibility and escape liability, for no one has a right to put in operation such forces calculated to endanger life and property without placing them under the control of a capable and active superintending intelligence.

In this case the question as to whether the defendant met the responsibility imposed upon it by law was fairly submitted to the jury under proper instructions. We are, therefore, of the opinion that the authority and the law relied on by defendant is not the rule in this jurisdiction, and that the specification of error based thereon fails.

The defendant further contends that the verdict in the sum of $7,000 is excessive. The case of Ardmore Oil & Milling Co. v. Barner, 72 Oklahoma, 179 Pac. 932, lays down the following rule:

"Plaintiff in error's third contention is that the judgment is excessive and appears to have been given under the influence of passion and prejudice. This contention is not tenable. In the case of H. C. Ferris and Alexander New, Receivers of the Missouri, Oklahoma & Gulf Railroad Company, plaintiffs in error, v. B. F. Shandy, defendant in error, 71 Oklahoma, 174 Pac. 1060,

this court said: 'The rule for determining whether damages awarded are excessive is that they must be so large as to strike mankind at first blush as being beyond all measure unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice and corruption. In short, the damages must be flagrantly outrageous and extravagant, for the court cannot draw the line, having the standard by which to ascertain the excess. C., R. I. & P. R. R. Co. v. De Vore, 43 Okla. 534, 143 Pac. 874 (L. R. A. 1915F, 21).'"

It appears in this case that the deceased contributed not only in money, but food and clothing to his parent, and that the parent was dependent, in part at least, upon the earnings of the deceased.

The rule is that the verdict should be only in such amount as will reasonably compensate for the pecuniary loss sustained. The deceased in this case was a manual laborer, and apparently earned fair wages working as a cotton picker and at such other work as he could get to do. It does not appear from the record that he earned over $40 or $50 per month. The deceased resided at home with his father and contributed to their joint maintenance and support. It further appears that the father is an elderly man of limited means, of poor health, and of limited earning capacity. The record contains sufficient circumstances to disclose a partial dependency. The earning capacity of the deceased was limited. His contribution to the support of his parent, while not great, was of substantial assistance to his parent, and the amount of such contribution would probably have been increased in the future. However, the record as a whole discloses only a partial support of the plaintiff by deceased, and only a limited degree of dependency. We think, therefore, that the verdict is excessive and that a remittitur in the sum of $3,000 should be required.

We quote the following rule from New v. McQuillan, 79 Okla. 70, 191 Pac. 160:

"Sec. 2845, Rev. Laws 1910, provides that any person who suffers detriment from an unlawful act or omission of another may recover from the person in fault a compensation therefor in money which is called damages. It will be observed that the damages provided for in the above statute, the damages contemplated by such statute, are such as will compensate in money: that is, such as will compensate for the money loss sustained, the pecuniary injury sustained. The law does not undertake to heal the wounds of grief nor to supply the counsels and comfort of a husband and father, and very wisely refrains from such undertaking. To attempt to do so would be futile and impossible as well as unsafe.

"This provision of law may seem cold and sordid; and in many cases may be so; but on the other hand, the lawmakers and the courts have realized that to undertake with money to fill the place which a father and husband has filled in his family, is just as sordid, and that to undertake to do so by law would be to open up avenues more dangerous to justice than to merely prescribe a compensation for the pecuniary injuries sustained.

"It seems to us, in view of the entire record and in consideration of the surrounding conditions and circumstances, that a judgment for two-thirds of the amount of the verdict, that is, a judgment for $14,250 and costs, would fully and fairly meet the compensation contemplated and provided for by law."

We think under the foregoing rule that the damages awarded in this case are excessive, and that the judgment should be reduced to $4,000.

It seems to us, in view of the entire record and in consideration of the surrounding conditions and circumstances, that a judgment for the sum of $4,000 and costs would fully and fairly meet the compensation contemplated and provided for by law.

With this modification of the judgment and with instructions that plaintiff file a remittitur of all in excess of $4,000, the judgment is affirmed.

By the Court: It is so ordered.