PUBLIC SERVICE CO. of OKLAHOMA v. HAWKINS.

No. 31317. Feb. 21, 1944.

As Corrected on Denial of Rehearing June 13, 1944.

*149 P. 2d 783.*

V. E. McInnis, of Oklahoma City, for plaintiff in error.

Gomer Smith and Nelson Rosen, both of Oklahoma City, for defendant in error.

WELCH, J. Plaintiff's deceased husband lost his life in Tulsa county, Okla., while working as a lineman in the employ of defendant, a domestic corporation.

Defendant, upon appeal, asserts that venue of the action lies exclusively in Tulsa county under 12 O. S. 1941 § 134, which it claims governs under the facts here. It contends that the opinions in First National Bank of Seminole v. Henshaw, 169 Okla. 49, 35 P. 2d 898, and Atlas Life Ins. Co. v. Randle, 190 Okla. 680, 126 P. 2d 517, conclusively support its position in that regard. In its reply brief it calls attention to other reported decisions and texts as further supporting its view.

Plaintiff contends that her action was brought in a county of proper venue on the theory, among others, that the chosen venue is authorized by the above-cited statute when same is properly construed. Our conclusion on the venue issue is based entirely on the proposition thus presented, and other theories presented on that issue are not considered.

Plaintiff's theory in that regard may be best shown in her own language as follows:

"The defendant corporation is 'situated' in Coal county, and under the provisions of 12 Okla. St. Ann. § 134 an action against a corporation created by the laws of this state may, at the option of the plaintiff, be brought in the county in which it is situated. Under the foregoing statute, a corporation is deemed to be situated in any county where it has a place of business and agents or employees engaged in carrying on the same."

The facts with respect to that question appear in this record as follows: No part of the cause of action arose in Coal county; the defendant corporation was organized and chartered under the laws of this state; its charter contains the following provisions:

"To manufacture and/or purchase gas or electricity, or both, and to transmit, distribute and sell the same, either at wholesale or retail.

"To acquire, hold, manage and operate canals, reservoirs, dams, ditches, flumes, aqueducts, pipes and water lines as well as distribution systems thereof for the purpose of furnishing water for public and/or private use, and such other property as may be necessary for use in connection therewith, as well as for the purpose of generating and transmitting electrical energy, heat, power, water and other uses. . . .

"To buy, acquire, own and build, and to sell and dispose of any and all necessary transmission lines, either pole lines or pipe lines, for the conducting of said gas, or electricity, to the points where the same may be sold by this company, either at wholesale or retail.

"The principal place of business of this corporation shall be at the City of Tulsa, Tulsa county, State of Oklahoma, and other offices of this company may be maintained for the transaction of its business and corporation powers at any other point or points, within said state, and offices for such purposes are hereby fixed at Oklahoma City, Oklahoma county, Oklahoma; Guthrie, Logan county, Oklahoma; Vinita, Craig county, Oklahoma; Atoka, Atoka county, Oklahoma; Lehigh and Coalgate, Coal county, Oklahoma; Chickasha, Grady county, Oklahoma; and Lawton, Comanche county, Oklahoma; and the directors of this company may in the future

designate other offices in other counties in the State of Oklahoma where the business of this corporation may be transacted and meetings of its stockholders and directors held. . . . "

The further facts are that defendant has maintained an office and electrical service lines in Coal county continuously since 1925, with Mr. Downing in charge (upon whom service was had) and with other employees for the purpose of servicing that community; that Mr. Downing was not a principal officer of such corporation and had no powers of corporate control, and that the principal business of the corporation was conducted in Tulsa county; that none of the principal officers of the corporation resided in Coal county or were summoned there.

Section 134, supra, provides:

"An action, other than one of those mentioned in first three sections of this article, against a corporation created by the laws of this state, may be brought in the county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside, or be summoned, or in the county where the cause of action or some part thereof arose."

Plaintiff's approach in her discussion in connection with this statute concedes that defendant's "principal office or place of business is in Tulsa county," but she says that by reason of the provision in that statute to the effect that the action "may be brought in the county in which it is situated," the defendant may also be sued in a county other than that in which it maintains its principal office or place of business. Defendant urges that the terms "situated or has its principal office or place of business . . ." are used synonymously in the statute. That the whole phraseology refers only to the principal place of business, and that the use of the term "in which it is situated" does not enlarge that meaning.

Contrary to defendant's assertion, this court has never considered the matter of the construction of those particular features of this section of our statute, as we shall presently point out.

Our task here is the construction of a specific statute fixing the venue of actions as relates to domestic corporations. We are not confined to certain general or common-law rules relating to determination of the residence or domicile of a corporation as fixing venue, nor indeed are we concerned with such rules if our statute provides otherwise. As a consequence, the authorities given us by defendant to the effect that the principal place of business of a corporation is conclusively fixed by the charter provisions, and that it can be sued only at the place thereby fixed because that is the place of its residence or domicile, will not aid defendant here if our statute does, as plaintiff says, also authorize suit in other counties. Stated differently, it is of no importance where this corporation is domiciled, or has its principal office or place of business, if that statute is intended to and does permit suit elsewhere.

In Thompson on Corporations (3rd Ed.) sec. 3019 (vol. 4, p. 784) there appears the following:

"In the absence of statutory regulation, the common-law rule prevails, which requires that actions against a corporation must be instituted in the county where the corporate property is in whole or in part situated, or where it has its principal place of business and transacts a substantial part of its business; and a statute merely regulating the service of process was held not to affect this common-law rule. In other words, a corporation is properly suable only in the county of its incorporation, unless the statutes allow suit to be brought in jurisdictions in which the corporation conducts business or maintains an agency, and, where this exceptional method is allowed, the party invoking the jurisdiction must show clearly that he comes within the exception. A domestic corporation must maintain a principal office in some county of the state of its creation for the purpose of suing and being sued, and this though the charter allows the maintenance of a principal office outside of the state."

And at page 788 of the same text we find the following:

"Where a corporation was situated in one county and had its principal office or place of business in another, and its chief officer resided in a third, an action might be maintained against it in either of such counties, under a statute providing that an action against a corporation may be brought in the county in which it is situated or has its principal office or place of business, or in which its chief officer resides."

The Supreme Court of Kansas, in the case of McLeod v. Trusler Grain Co., 127 Kan. 119, 272 P. 119, in construing a statute similar to our own as regards this question, held as shown by the syllabus as follows:

"Jurisdiction of a district court over an action against a domestic corporation, having offices in more than one county within the state, is not limited to that county in which the principal office of the corporation is located. Under the provisions of the statutes (R.S. 60-2518 and R. S. 60-504), it may be sued and service of summons had upon its chief officer found within any county where it has an office."

We quote from the opinion as relates to our question as follows:

"The question presented here is whether the district court has jurisdiction of a corporation sued in a county other than where its principal office is located. . . .

"The petition recited that the defendant is a corporation existing under the laws of Kansas, having its principal place of business at Emporia, Lyon county, but at the present time has a branch office in the New England Building in Topeka, Shawnee county. . . .

"The defendant relies on another section of the statute which reads: 'An action, other than one of those mentioned in the first three sections of this article, against a corporation created by the laws of this state or of the territory of Kansas, may be brought in the county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside, or may be summoned; but

if such corporation be an insurance company, the action may be brought in the county where the cause of action, or some part thereof, arose, or where the plaintiff resides. But the provisions of this article shall not apply in the case of any corporation created by a law of this state or the territory of Kansas whose charter prescribed the place where alone a suit against such corporation may be brought.'

"It may be noted, however, that this section provides that the action against a corporation may be brought in the county in which it is situated or has its principal office or place of business or in which any of the principal officers thereof may reside or be summoned. In Henry v. Railway Co., 92 Kan. 1017, 142 P. 972, it was said:

" 'Where in the article of the Code relating to venue it is provided that certain actions "must," and that others "may" be brought in certain counties, and that all others must be brought in the county in which the defendant resides or may be summoned, the actions with respect to which the permissive term "may" is used, are not thereby rendered local, and they may be brought in any county in which the defendant may be summoned.'

"Section 60-504 nowhere provides that the action must be brought in the county where the principal place of business is, but that it may be brought. . . .

"We are of opinion that where a domestic corporation maintains several offices in different counties within the state and where it transacts business in the several counties in which it has such local offices (as in this case), it is not necessary that suit against it be brought only in the county in which it claims its principal office. . . ."

The Supreme Court of Nebraska in Freemont Butter & Egg Co. v. Snyder, 39 Neb. 632, 58 N.W. 149, held as follows in paragraphs 1 and 2 of the syllabus:

"The Fremont Butter & Egg Company was a corporation organized under the laws of the state for the purpose of buying and selling butter and eggs. Its principal place of business, as fixed by its charter, was in Dodge county, and

its chief officer resided there. It had and maintained in Saunders county a place of business, there exercised its corporate functions, and had there employees conducting the business for which it was organized. Held that, within the meaning of section 55 of the Code of Civil Procedure, the corporation was situated in Saunders county, and suable there.

"Section 55 of the Code of Civil Procedure provides: 'An action . . . against a corporation created by the laws of this state may be brought in the county in which it is situated or has its principal office or place of business. . . .' Held: (1) That the meaning of this statute is that a domestic corporation may be sued (a) in the county where its principal place of business is fixed by its charter, although its actual business is carried on, and its officers reside, in some other county; (b) that a domestic corporation, except those governed by sections 56-58 of the Code of Civil Procedure, may be sued in any county where it is situated, and that it is situated in any county where it has and maintains a place of business, and servants, employees, or agents engaged in conducting and carrying on the business for which it exists."

The following appears in the opinion:

"The next error assigned is that the district court of Saunders county had no jurisdiction of the corporation, as it could be sued only in Dodge county, that being the location of its principal place of business. Section 55 of the Code of Civil Procedure provides: 'An action . . . against a corporation created by the laws of this state may be brought in the county in which it is situated, or has its principal office or place of business.' It is argued that the word 'may' in this section, means 'must,' and that the word 'situated' is synonymous with 'principal place of business.' But the able counsel are mistaken in their construction. The meaning of this statute is that a domestic corporation may be sued (1) in the county where its principal place of business is fixed by its charter, and this though its actual business is carried on, and its officers reside, in some other county; (2) that a domestic corporation may be sued in any county where it is situated; and it is situated where it has and maintains a place of business, and servants, employees, or agents engaged in conducting and carrying on the business for which it exists. This statute was not intended to limit the county in which a domestic corporation, except those mentioned in sections 56-58, Code Civ. Proc., could be sued, to the one in which it has its principal place of business, but rather was enacted for the benefit of creditors and persons having claims against a domestic corporation. There are a number of lumber companies, corporations, whose principal places of business are in the cities of Omaha and Lincoln, having places of business, and employees exercising their corporate functions, in the various counties of the state. It was not intended by this statute that such corporations could only be sued in Douglas and Lancaster counties. If counsel's contention is correct, the corporation at bar, if it refused to pay the rent of, or vacate, the building it occupies in Wahoo, could only be sued for rent or in forcible detainer in Dodge county. The mere statement of the proposition refutes it. The corporation sued in this case had in Saunders county a place of business, agents and employees, and was exercising its corporate functions in that county, and hence was situated and suable there."

Further discussion of the rule in the Snyder Case, supra, is found in the later opinions of the same court in Bankers Life Ins. Co. v. Robbins et al., 53 Neb. 44, 73 N. W. 269, and in Western Travelers Acc. Ass'n v. Taylor, 62 Neb. 783, 87 N. W. 950.

In Spratley v. Louisiana & Arkansas Ry. Co., 77 Ark. 412, 95 S. W. 776, the Supreme Court of Arkansas, in a majority opinion delivered on rehearing, said:

"We have considered the motion to rehear in this case, and are of the opinion that it should be overruled, though a majority of us think that the former opinion delivered in this case should be modified to some extent. The statute provides that an action against a corporation of this state 'may be brought in the county in which it is situated, or has its principal office or place of business, or in which its chief officer resides.' Kirby's Digest, para. 6067. In the former opinion it was said that, within the meaning of this statute, a

corporation is situated where it has its principal office or place of business, and that 'it can be served there or in the county in which its chief officer resides, but not elsewhere.' A further consideration of the case has convinced a majority of the judges that this interpretation of the statute is not quite correct.

"It is true that many corporations have their principal office and place of business in the county where the corporation is situated; but they may be separate, and we think that, within the meaning of this statute, a corporation may be situated in one county, its principal office or place of business may be in another, while its chief officer may reside in still another county in the state. Where that is the case, then, under this statute, an action against the corporation may be brought in either of those three counties."

The opinion would seem to hold, however, by reason of the peculiar facts, that the railway corporation there was not situated in the county wherein the suit was brought, though it did maintain offices therein.

The recent text, C. J. S. 19, Corporations, par. 1296, page 975, is generally helpful as to venue as regards corporations. Therein is discussed the various general and common-law rules and the effect thereon of statutes of various provisions. There appears therein the following statement:

"Within a statute authorizing a corporation to be sued in the county in which it is situated, a corporation is deemed to be situated in any county where it has a place of business and agents or employees engaged in carrying on the same."

That text does not indicate anything contrary thereto under similar statute.

Defendant in its principal brief cites only section 134, supra, and the two Oklahoma cases above named in support of its position in this regard. In its reply brief it states that the McLeod, the Snyder, and the Spratley Cases, supra, stand alone as concerns this point, and that they are against the great weight of authority. It gives us the quotation from Thompson on Corporations (3rd Ed.) vol. 4, p. 784, which we have hereinabove quoted. In addition it cites Roff Oil & Cotton Co. v. King, 46 Okla. 31, 148 P. 90, as supporting its view. We recognize nothing in defendant's citations of authorities contrary to the decisions in the McLeod and Snyder Cases, supra.

Our own cases of Roff Oil & Cotton Co. v. King and First National Bank of Seminole v. Henshaw, supra, have no facts or questions similar to the present case. They merely recognize some general principles of the foundation of the general rules relating to venue, and they did not have under consideration the construction of section 134, supra, or any statute similar thereto. The facts in those cases would not have justified a consideration of the question we have here.

Much the same may be said concerning our Atlas Life Ins. Co. Case, supra. Though the facts disclosed thereby may show that it would or might have been proper to raise the question we are now considering, the same was not done, and the court therein gave no attention to a construction of section 134 further than to say that it governed the venue in that case. And so it appears to do, just as both parties here contend that it governs in this case.

The sole question presented and decided in the Atlas Case, as fully shown by the syllabus, was that 12 O. S. 1941 § 164 does not govern venue merely because it provided a method of procuring service upon the insurance company. These cases are not authority, or in point, on the present question.

This defendant was fully authorized, under specific charter provisions, to conduct its corporate business in Coal county, and to exercise its "corporate powers" there. It had continuously maintained an office there for some 15 years, staffed by employees engaged in carrying on the essential business authorized by its charter and in which it was actively engaged.

We adopt the construction and rea-

soning of the McLeod and Snyder Cases, supra, as applicable to the construction of our statute, 12 O. S. 1941 § 134, and find no error herein on that question.

We quote defendant's proposition 2 as follows:

"The verdict of the jury in the sum of $50,750 was so excessive as to strike mankind at first blush as being, beyond all measure, unreasonable."

In support thereof it cites Chicago, R. I. & P. Ry. Co. v. Brooks, 155 Okla. 53, 11 P. 2d 142, and Oklahoma Gas & Electric Co. v. Oliphant, 172 Okla. 635, 45 P. 2d 1077. It also discusses the case of Chicago, R. I. & P. Ry. Co. v. DeVore, 43 Okla. 534, 143 P. 864, calling attention to the remarks of the court therein regarding income which might be obtained from interest at 6% by investing a sum equal to the amount of the judgment, and presents figures along the same thought as relates to the amount of the present judgment.

The facts shown in this record are that deceased was 38 years of age at the time of his death; that he was strong, able-bodied and in good health; that he was an able lineman, was industrious and continuously employed; that he was earning $200 per month when killed in 1941, and had for a goodly number of years prior thereto earned approximately that much; that he had earned as much as $400 per month and expenses while working as foreman of a line crew in Mexico; that he had a life expectancy of 30.3 years; that plaintiff was a housewife and depended solely upon her husband for support, and that funeral expenses amount to $750.

In Producers & Refiners Corp. v. Castile, 89 Okla. 261, 214 P. 121, it was said:

"In this jurisdiction all limitations on the amount of recovery in such cases are prohibited by article 23, sec. 7, Wms.' Const., which provides:

" 'The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation.'

"In these circumstances we have no right to place limitations upon the amount returned by the jury unless we are convinced that the amount of recovery bears no relation whatever to the evidence, or that it was induced by bias or prejudice on the part of the jury."

In the Oliphant Case, supra, we stated the applicable rule in paragraph 10 of the syllabus as follows:

"When a verdict is attacked on the ground that it is excessive, this court will not disturb the same unless the jury has committed some gross and palpable error, or acted under bias, influence, or prejudice, or has totally ignored the rule of law by which damages are awarded."

However, a thorough consideration of our former decisions discloses that the rule is well settled that when the amount of damages awarded for wrongful death is so excessive as to indicate that the jury was actuated by bias, prejudice, or passion, it is the duty of this court to determine and hold that the verdict is excessive and to remand the cause with directions to the trial court to grant a new trial unless proper remittitur is filed by the plaintiff.

In the Brooks Case, supra, in passing upon a similar condition we found the verdict to be excessive, expressing the opinion that the ends of justice require that a new trial be granted unless the plaintiff file remittitur. Upon thorough review of the contentions here we are likewise convinced that the ends of justice require that we hold this verdict for $50,750 to be excessive, and that we should remand this cause to the trial court with directions to grant a new trial unless the plaintiff files a remittitur in the sum of $15,000. See, also, C., R. I. & P. Ry. Co. v. Fontron Loan & Trust Co., Adm'r, 89 Okla. 87, 214 P. 172; Oklahoma Portland Cement Co. v. Dow, 98 Okla. 44, 224 P. 168; Independent Cotton Oil Co. v. Beacham, 31 Okla. 384, 120 P. 969; Slick Oil Co. v. Coffey, 72 Okla. 32, 177 P. 915; Gypsy Oil Co. v. Green, 82 Okla. 147, 198 P. 251, and City of Sapulpa v. Deason, 81 Okla. 51, 196 P. 544.

In its discussion of the Brooks Case, supra, defendant asserts that it points to the correlative proposition that the consideration of the question of excessive damages involves careful examination of the court's instructions, and that the court in this case erred in instructing the jury to the effect that plaintiff might recover for loss of contributions which she might ". . . reasonably have anticipated receiving from her husband for such period of the time *as she might reasonably have been expected to live.* . . ." And that the giving of such instruction contributed to the alleged excessive verdict.

It says that there was no evidence on the proposition as to how long the plaintiff might be expected to live, and that therefore it was improper for the court to include that element in its instructions. In this connection defendant does not contend that such proof must have been made by plaintiff to establish her right of recovery. Defendant apparently proceeded in trial upon the theory that the element of plaintiff's life expectancy was not a necessary element of the measure of damages, for it requested an instruction on the measure of damages which omitted the element of plaintiff's life expectancy. That requested instruction was given. Defendant did not request an instruction to the effect that plaintiff's life expectancy must be proven, nor did it specifically raise that question in any other proper manner. It clearly evidenced entire satisfaction to submission of the measure of damages to the jury, omitting the element of plaintiff's life expectancy.

It would appear, then, that the inclusion of the further restrictive provision as to the life expectancy of the plaintiff in another instruction of the court could only result in a more favorable instruction than requested on the subject. In other words, defendant requested and received an instruction to the effect that plaintiff might be awarded damages calculated upon a basis of and limited by deceased's life expectancy. The court also instructed that the jury would be limited to "such period of time as she

(plaintiff) might reasonably have been expected to live." Under the requested instruction the jury was limited to 30.3 years only; under the additional instruction the same purported to authorize a further limit of time, which it will be seen was more favorable to defendant than requested. We find nothing to indicate error prejudicial to defendant in that regard.

Defendant next complains that the trial court erred in refusing to give certain requested instructions. It urges that:

"The State of Oklahoma, through its legislative jurisdiction and in the exercise of its police power, saw fit to take away the usual measure of ordinary care such as would be used by prudent persons, and to fix rigid standards."

And the requested instructions based upon that theory were refused. The Corporation Commission is empowered by law to promulgate rules for the construction and maintenance of electrical installations which we may concede to have the force of law, but it does not follow that when and if such rules are complied with, a defendant is absolved from a compliance with the rules of law which require the exercise of reasonable care in such matters. One of such rules in evidence here specifically provides that those pertaining to this case are to be considered only as minimum requirements. We have consistently held that statutory requirements similar in nature to the rules here involved prescribe only minimum requirements and do not furnish an all-inclusive standard from which to determine as a matter of law whether one has performed his full duty toward another. St. Louis-S. F. Ry. Co. v. Rundell, 108 Okla. 132, 235 P. 491.

Plaintiff charged negligence of the defendant in furnishing a reasonably safe place to work, in the following particulars:

"(1) That the pole was rotten and decayed and insufficient to support deceased; (2) that the pole pin with which deceased came into contact was too close

to the pole; (3) that the defendant failed to insulate the 6,900 volt line,with which deceased came in contact; (4) that defendant failed to furnish proper rubber devices; (5) that the foreman of the crew failed to supervise and direct the work; (6) that defendant wrongfully required deceased to work on said pole during a violent wind storm; and (7) that defendant failed to de-energize the 6,900 volt line with which the deceased came in contact."

Much complaint is made by defendant because the court failed to prepare his instructions so as to inform the jury that an electric transmission line carrying 6,900 volts of electricity cannot be insulated. We would be unable from this record to announce as a matter of law that such a line could not be insulated, especially in view of the fact that all the evidence and the instructions requested by defendant and given by the court accept the proposition that such lines are in fact insulated by the employment of rubber gloves, rubber blankets and line hose, and by proper placement of the line itself. See Capitol Airways v. Indianapolis Power & Light Co., 215 Ind. 462, 18 N. E. 2d 776, where the Indiana court held that erection of power line upon the company's private property suspended from towers high above the ground is insulation within the statute requiring certain wiring to be insulated. We concede that the allegation and the theory of proof herein was directed largely toward the proposition whether the line of defendant was insulated with a continuous covering as ordinarily observed, but the gist of the issue, as plainly apparent from the proof and the instructions, was that it failed to protect its employee in some reasonable manner from contact with the electric current. We cannot be persuaded that a jury consisting of persons of ordinary intelligence would reasonably have been confused or misled in the matter.

Further complaint is made in that witnesses were permitted to give their opinion as to whether certain construction conformed to certain standards and whether same was safe or reasonably safe. It appears that the major portion of the evidence on the part of both plaintiff and defendant was adduced from the testimony of expert witnesses.

The rule announced in the Oliphant Case, supra, and others, provides ample authority for our rejection of that contention.

Nor do we find merit in the complaint that some of the witnesses testified that the construction or place of work was "not safe," as distinguished from "not reasonably safe." Questions and answers on the part of both parties sometimes omitted the use of the word "reasonably." The instructions were clear in emphasizing the term "reasonably safe" and the examination of the witnesses on the whole leaves no reasonable doubt that the distinction was maintained and understood, even though there was an occasional omission of the use of the word "reasonably."

We have examined this record with care and in view of the remittitur required herein, a further discussion of assignments of error would serve no useful purpose. Suffice it to say that the questions at issue were fairly submitted to the jury under proper instructions of the court, and finding no reversible error in this case, except that the verdict is excessive, the judgment of the trial court is affirmed upon plaintiff's filing a remittitur in the sum of $15,000 within 20 days, otherwise this case is reversed, and remanded for a new trial.