**TEXAS AND NEW ORLEANS RAIL-
ROAD COMPANY, Appellant,**

v.

**C. A. UNDERHILL, Appellee.**

**No. 15857.**

United States Court of Appeals
Fifth Circuit.

June 8, 1956.

Wyndham K. White, El Paso, Tex., Kemp, Smith, Brown, Goggin & White, El Paso, Tex., Baker, Botts, Andrews & Shepard, Houston, Tex., of counsel, for appellant.

Maurice M. Davis, Ft. Worth, Tex., Howard H. Lewis, Denning Schattman, Fort Worth, Tex., Davis, Schattman & Lewis, Fort Worth, Tex., of counsel, for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment following a jury's verdict in favor of the plaintiff below for injuries allegedly received by him from a fall off of a freight car, which he claimed resulted from a faulty coupling. It was brought under the Safety Appliance Act.[1]

The car on which the plaintiff was riding rammed into the diesel engine that was supposed to be pulling it with such force as to throw him to the ground. The essential question for the jury to pass on was whether the car became uncoupled after having once been automatically coupled or whether no coupling was ever made due to the negligence of the plaintiff in aligning the parts. If the former, then such uncoupling would make the railroad liable for its failure to have couplers which, after a secure coupling was effected, would remain coupled until intentionally released; if the latter, then the defendant would not be liable for the injury.

All of the facts except as to the actual connection made upon the intended coupling of the cars are without substantial dispute.

On the night of August 12, 1953, plaintiff was employed as a brakeman on one of the defendant's freight trains, traveling east from El Paso. At about 9:00 P.M. it stopped at Sierra Blanca, and after some routine switching, the engine disengaged from the train and backed into a siding to take on a box car and two tank cars. It backed into the box car and the plaintiff let the handbrake off the car. According to his testimony, he then checked the coupling with his light, climbed onto the back of the box car and gave the back-up signal. After the engine backed up approximately one and a half or two car lengths, he gave the easy signal, for the purpose of stretching the coupling. With the application of the engine's brakes, the plaintiff felt the box car slow down and start to stop as the slack ran out. At this point he gave another back-up signal and the engine and car coupled onto three tank cars. After cutting off the third tank car, which was not needed, and releasing the brakes on the other two, he signalled the engineer to move forward and felt the car jerk as they started out. Once they were

[1]. 45 U.S.C.A. § 2.

under way he signalled for an increase in speed and for the cars to proceed on out on the main line. The cars picked up speed and as they were going 20 to 25 miles an hour the plaintiff felt the car on which he was riding hit the other cars. He was thrown to the ground and suffered the injuries complained of. Other testimony established that the cars struck one another as a result of the box car becoming separated from the engine and then ramming against it.

The railroad's defense was that the sole proximate cause of the cars striking the engine was the plaintiff's failure to make a proper coupling and to insure that the coupling was joined by stretching the coupling properly, as required by the operating rules, i. e., by having the engine move forward to test it immediately after the engine and the box car first met. The plaintiff answered that he did actually make a proper coupling and thus it was unimportant that he did not test it in the manner set forth in the rules. On appeal, the railroad does not contend that the jury could not have accepted the plaintiff's testimony that he stretched the coupling and that it was joined, but rather that the issue was submitted to the jury on erroneous instructions. It also contends that the court prejudiced the railroad by its ruling and comments in excusing a venireman, and that the court erred in not setting the verdict aside when it appeared that the jury might have been improperly influenced by conversations with members of the jury by a spectator at the trial.

■ It was admitted by the appellee that he did not stretch the coupling in the manner required by the rules.[2] While it is true that a failure to perform an act required by the rules may, under certain circumstances, be the sole proximate

cause of an injury, we think this could not be the case here. The stretching procedure is not necessary to *make* a coupling, but to *test* it. If in fact a good coupling was made, the stretching would have demonstrated that fact. Since the jury must have found that the plaintiff did in fact make a good coupling, it cannot be said that a failure to test it was the proximate cause of plaintiff's injury.

The instruction objected to is as follows:

"The court charges you that plaintiff's suit is not based upon negligence and therefore in determining whether the cars became uncoupled from the engine you will not consider whether the railroad company, the defendant in this case, was negligent. In other words, the condition of the couplers before and after the accident is immaterial; the question for you to determine being as to whether or not you find from a preponderance of the evidence that the cars came uncoupled from the engine, and the fact that after the accident an inspection revealed no actual defect in the couplers is not material if you find from a preponderance of the evidence that they actually became uncoupled as alleged by plaintiff, and that such uncoupling, if any, was the direct and proximate cause of the plaintiff's injuries."

The railroad introduced evidence that the couplers were inspected after the accident and found in good working order, and urges that the charge of the court in effect struck this evidence from the jury's consideration.

■ A reading of the charge shows that the court, did, although probably inadvertently, include an erroneous statement, which may have been explained

---

**2.** The rules seem to require that "when passenger or freight cars are coupled and before beginning to shove passenger or freight cars, slack between the cars must be stretched to insure that all cars are properly coupled." This is done by having the locomotive move forward a little before shoving them. It was testified

here that the shoving movement took place up a grade and it is the contention of the railroad that, when the forward movement commenced the locomotive simply moved away from the freight car which followed down the grade at a more leisurely pace until the locomotive stopped and was struck by the car.

subsequently. As the real question for the jury's determination was whether a coupling was in fact made, it could not be the law that the evidence offered by the defendant to the effect that the couplers were not defective immediately after the event was immaterial. It was quite material in enabling the jury to decide whether the plaintiff's testimony that he had made a good coupling was credible. It was, of course, immaterial as bearing on the question of negligence,[3] which is undoubtedly the thought the trial court sought to express. On the question whether a good coupling had in fact been made, it was quite material. The jury was called on to determine whether the plaintiff had placed the parts in proper alignment for effecting a coupling. He testified he had done so. From the proof that, when properly aligned, they functioned properly immediately after the accident, the jury could infer that he had not done so.

However, in view of the fact that we find it necessary to reverse the judgment on another ground, we need not decide whether this statement by the trial court in its charge, when considered with the later instructions, constituted reversible error. We call attention to it in order that the trial judge may avoid it on another trial.

Appellant further complains of the court's ruling and comments in excusing a venireman. As such an occurrence is unlikely to occur on a new trial, no ruling need be made on this point of appeal.

The remaining error alleged is the court's refusal to set aside the verdict of $32,500 for the plaintiff, on the ground that the jury was improperly influenced by conversations with them as well as remarks overheard by them from one Floyd Phillips. In support of the motion, the affidavits of four jurors were offered to the effect that Phillips talked to them and other members of the jury during the course of the trial, and identified himself as an employee of the railroad who had sustained a fall from a box car and was considering suing the railroad himself. He also told one of the jurors that the rules were maintained only to fire people by and that nobody paid any attention to them on the railroad. Within the hearing of the jury he stated that if a railroad employee complied with the rules he would be unable to get the job done; that it was impossible to run a railroad by the book; and that he would like to hang Kraemer up by his toes, Kraemer being the railroad's division superintendent who had stressed in his testimony the great effort made by the railroad to enforce the rules. One of the affidavits stated that Phillips "gave the impression that he was prohibited from returning to work after having suffered the injury." Upon observing Phillips talking with the jurors, the railroad's counsel twice requested the court to instruct him to stop, and the court apparently complied. At the completion of the case, the railroad's counsel questioned the jurors regarding what Phillips had said, and then asked the court to set aside the verdict and grant a new trial. The court considered the affidavits and denied the motion, "being of the opinion that neither the jury nor its verdict were influenced or affected" by the remarks.

█ The question must be approached with the rule in mind that although denials of motions for new trial are reviewable when an appeal is taken from a final judgment, they are reversible only for an abuse of discretion. 6 Moore's Federal Practice 3893. Federal and not state law applies. 6 Moore's Federal Practice 3710.

That the remarks had a direct bearing on the case and were prejudicial can hardly be disputed. The consideration by the jury of much less prejudicial extraneous evidence has been held grounds for a new trial. In Stiles v. Lawrie, 6 Cir., 211 F.2d 188, an automobile negligence case, it was held reversible error not to grant a new trial where one of the jurors brought a manual to the jury

3. Carter v. Atlanta St. Andrews Bay Ry. Co., 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236.

room purporting to show how far a car would skid at various speeds. In Callahan v. Chicago, Milwaukee & St. Paul Ry. Co., C.C.N.D.Iowa, 158 F. 988, a new trial was granted where there were conversations with third persons, one of whom remarked that it was a "hold-up case." 158 F. 988, 991.

The appellee emphasizes that there was no misconduct on his part, or even awareness of the incidents. However, this was also the situation in Stiles and Callahan supra and Southern Pacific v. Klinge, 10 Cir., 65 F.2d 85. He also asserts that the remarks made directly to the jurors were not prejudicial. This can hardly be justified with regard to the remark that the rules were maintained only to fire people by and that nobody paid any attention to them on the railroad, made to juryman Louis A. Scott, Jr. Moreover, the distinction is not a valid one, and was not made in Paramount Film Distributing Corp. v. Applebaum, 5 Cir., 217 F.2d 101, wherein both types of remarks were found to have affected the verdict.

■ The appellee claims that the railroad waived its objection by not immediately moving for mistrial, and has attempted instead to keep the objection for a trump card in case of an unfavorable verdict. Of course, it was counsel's duty to inform the court of these improprieties as soon as they heard of them, which they did. It is equally apparent that the appellant should not be penalized for failure to act sooner if it had no knowledge of the contents of the conversations. In this case, the appellant knew of the conversations but apparently not of their content—and they could have been harmless. In promptly reporting the matter to the court counsel acted properly and with due diligence, and they cannot be charged with the duty, which would of itself have been highly improper, of investigating the matter while the trial was in progress. They could not, of course, have queried the jurors in order to ascertain what, if anything, Phillips had said to them.

■■ The court found that the conversations did not affect the verdict. As we observed in the Applebaum case:

"An appellate court is always reluctant to disagree with the trial judge in such matters, yet it has the duty to see that there is no miscarriage of justice." 217 F.2d 101, 106.

The consideration of improper evidence by the jury has in some cases been held to raise a presumption of prejudice, where the evidence may have had such an effect. Stiles v. Lawrie, 6 Cir., 211 F.2d 188; Wheaton v. U. S., 8 Cir., 133 F.2d 523. We need not decide here whether the consideration of such evidence raises a presumption, or merely permits an inference, of prejudice. The extent of improper influence resulting from extraneous evidence is by its very nature a question extremely difficult of clear proof. However, it is plain that in this case, the likelihood that the outside influences affected the verdict was very strong. Under such circumstances, it was an abuse of discretion to have denied a new trial.

The judgment is reversed and the case remanded for a new trial.

Reversed and remanded.