ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a Corporation, F. H. Atkins, Leo V. Rheuark and J. N. Berry, Plaintiffs in Error,

v.

Mrs. Estella KILGORE, Defendant in Error.

No. 38932.

Supreme Court of Oklahoma.

Oct. 31, 1961.

Rehearing Denied Dec. 19, 1961.

James L. Homire, St. Louis, Mo., Charles E. Daniel, Drumright, Franklin & Harmon, Oklahoma City, for plaintiffs in error.

C. Lawrence Elder, Tulsa, for defendant in error.

IRWIN, Justice.

Plaintiff commenced this action to recover damages for personal injuries sustained by her as a result of a train-automobile collision at a street intersection in the City of Bristow, Oklahoma. The defendant St. Louis-San Francisco Railway Co. owned and operated the train and the other defendants were in charge of the operation at the time of the accident.

This is a companion case to case No. 38,-735, St. Louis-San Francisco Railway Co. v. Fox, Okl., 359 P.2d 710, decided by this Court January 10, 1961. Fox, in that case, and plaintiff herein were occupants of the same automobile when the collision occurred. The evidence on the part of the plaintiff herein is for all intent and purposes the same as in the Fox case, supra, and reference to such case is made to such evidence.

Trial was had to a jury and the defendants appeal from a judgment entered against them in the sum of $35,000. On appeal the defendants agree that if the Court was correct in the Fox case as to the sufficiency of the evidence to make a case of actionable negligence against the defendants, to which holding they do not agree, then the defendants are not entitled to an outright reversal of the verdict in the present action. In this connection, the question of actionable negligence was submitted to and determined by the jury adversely to the defendants, in this present action as well as

in the Fox case, supra. We therefore hold the evidence on the part of the plaintiff was sufficient to sustain a verdict and judgment for actionable negligence.

However, the Fox case is not necessarily controlling in every respect in the instant action. In the Fox case, the defendants demurred to the evidence offered by the plaintiff and upon the overruling of such demurrers, defendants elected to stand upon their demurrers. In the instant case, the defendants did not stand on their demurrers but introduced evidence to refute the claim of plaintiff. It is because of this distinction the defendants present questions which they contend constitute prejudicial errors which were not considered and determined by the court in the Fox case.

The defendants first complain of the admission of certain pictures taken at the scene of the accident shortly after the collision. The pictures objected to depict the automobile, the position the same was in after the collision and the damage thereto as well as the damage to the deisel engine. The objection to the exhibits was on the ground the defendants admitted the accident had occurred and therefore pictures thereof had no bearing on the case and were introduced for the sole and only purpose of arousing the sympathies and prejudices of the jury. It is well to note in this connection, while the defendants admitted the accident, they did not admit negligence on their part, or liability for the damage sustained by the plaintiff, but left these matters to be established by the plaintiff by a preponderance of the evidence.

■ We have consistently held that where photographs are proved to be true and correct representation of whatever they purport to represent, they are admissible and competent as evidence, as an appropriate aid to the jury in elucidating the evidence; and this rule applies to persons, places and things. See Smith v. Territory, 11 Okl. 669, 69 P. 805; Kansas City Southern Ry. Co. v. Waters, 120 Okl. 1, 249 P. 742; Defiance Oils, Inc., et al. v. Hardzog, 178 Okl. 6, 61 P.2d 572; Federal Life Ins.

Co. v. Firestone, 159 Okl. 228, 15 P.2d 141, and Johnson et al. v. McRee et al., 66 Cal.App.2d 524, 152 P.2d 526. We therefore hold the pictures were admissible as an aid to the jury for whatever they might be worth on the question of negligence and the force of the impact of the collision.

■ The defendants next complain of the admission of certain testimony in behalf of the plaintiff. The witness Davis, who took the pictures after the accident, and which were introduced in evidence over the objection of the defendants, testified that he had seen the crossing the day he testified; that the crossing was much rougher on the day of the accident than on the day of the trial and that about a week prior to the trial he almost stalled his car at the crossing. The rule with reference to evidence of repairs or changes in condition of the crossing after an accident is that such evidence is inadmissible because of the inference of negligence on the part of the defendant. See Sloan v. Warrenburg, 36 Okl. 523, 129 P. 720; Missouri K. & T. Ry. Co. v. Johnson, 34 Okl. 582, 126 P. 567; Foreman v. Chicago, R. I. & P. Ry. Co., 181 Okl. 259, 74 P.2d 350. However, we do not believe the above rule is applicable herein. At the close of all the evidence, the trial court, by and with the consent of the attorneys for plaintiff and defendants, sent the jurors to the scene of the accident to view the scene of the accident. The jurors had heard the testimony of all the witnesses as to the condition of the crossing at the time of the accident and viewed the pictures of the crossing taken shortly thereafter. Upon viewing the crossing itself the individual jurors were able to draw their own conclusions and whatever error was committed by the admission of the testimony was cured by the jurors viewing the scene of the accident, by and with the express consent of the defendants. This is especially true in view of the fact the witness Davis did not testify as to any repairs or changes made in the crossing subsequent to the accident. If any error existed it was harmless.

Defendants also contend the trial court erred in allowing, over defendants' objection, a witness to testify that about a month before the accident she almost got hit at the same crossing because no whistle was sounded by the train. As hereinafter pointed out this testimony was given to disclose whether she listens for the whistles of the train and if she did, why.

The witness testified she lives on 2nd street, close to the scene of the accident; that she heard the train whistle just as it reached 2nd street and that it did not whistle prior to that time nor did the bell ring. On cross-examination she was asked the following question:

"Q. Of course, you, like most people that live around the railroad crossing, trains come by and whistle, you wouldn't pay any attention to it?"

The question as propounded contains an implication of inference the witness was not being truthful in her testimony or that she was stretching the blanket or being over zealous in her efforts to assist the plaintiff. She started answering by explaining why she pays particular attention to the train whistles, but the attorney for defendants interrupted her, and, although the attorney for the plaintiff intervened to get the explanation in the record, the attorney for the defendants adroitly steered her away from her explanation by asking another question and insisting that she answer his later question. On re-direct examination, over the objection of the defendants, the witness was permitted to make her explanation. This explanation was that she and her husband and their four children were riding in their car and started to cross the crossing. That the train was coming and it had not whistled. That she screamed and her husband stopped before crossing. That is why she said she notices the whistles of the trains. The admission of this explanation on the part of the witness was not error on the part of the trial court. See Templeton v. State, Okl.Cr., 293 P.2d 636; Continental Oil Co. v. Williams, 207 Okl. 501, 250 P.2d 439.

Defendants next contend they were entitled to show the plaintiff had refused them the right, before trial, to take the depositions of her attending physicians. The information gained by a physician or surgeon from his patient or gained by an examination of the patient is privileged. Title 12 O.S.1951 § 385; Massachusetts Bonding & Insurance Co. v. Jones, 185 Okl. 551, 94 P.2d 885. It was the right and privilege of the plaintiff to refuse the request of the defendants that her doctors be permitted to release information they had received from her or obtained by their examination and treatment of her, as to her injuries or physical condition, and it was not error on the part of the trial court to refuse the offer of proof.

Defendants also complain about the alleged error of the trial court in giving certain instructions to the jury and refusal to give certain requested instructions. We have carefully examined the requested instructions and those given by the trial court and find that the theories of defense which were requested by the defendants were covered in substance in the court's instructions, and the instructions as a whole fairly presented the issues to the jury; therefore, there was no substantial error. See Moody v. Childers, Okl., 344 P.2d 262, and cases cited therein.

Seven days after the verdict had been returned herein, accepted by the trial court and filed and the jurors discharged, separate attorneys for defendants talked to two of the jurors separately. The defendants, on the strength of the conversations, filed a motion to recall the jury and for judgment notwithstanding the verdict. The motion set out that the jurors stated that immediately upon retiring to the jury room, they considered the question of negligence and all agreed that neither the parties, plaintiff nor defendants were negligent; that the verdict was based upon a determination of an amount which would

compensate plaintiff for her medical and legal expenses past and future, due to the accident, for her lifetime. In support of the contention the motion should have been sustained, the defendants cite and rely on Detrixhe v. McQuigg, Okl., 316 P.2d 617; Williams v. Pressler, 11 Okl. 122, 65 P. 934; Texas & New Orleans Ry. v. Underhill, 5 Cir., 234 F.2d 620, 64 A.L.R.2d 152; and Fitzpatrick v. St. Louis-San Francisco Railway Co., Mo., 327 S.W.2d 801. In the cited cases, the trial court acted upon information not from the jurors, but from outside sources. In this state we have always adhered to the rule that a juror will not be permitted to impeach his verdict by affidavit or by testimony. See Rice v. Emerson, 181 Okl. 51, 72 P.2d 498 and cases cited therein. The trial court correctly denied the motion.

There remains but one further issue. It is contended the verdict is excessive in that it is the result of passion and prejudice and that the judgment should be vacated and a new trial ordered. They further contend, where a verdict is excessive, reversal of the action and directing the trial court to grant a new trial is the only remedy open to this court; that giving the plaintiff the alternative of filing a remittitur in a definite amount and affirming the action, or upon failure to file such remittitur, the cause be reversed and remanded for a new trial is not proper. We cannot sustain this theory. In Public Service Co. of Oklahoma v. Hawkins, 194 Okl. 272, 149 P.2d 783, 784, we held:

"When a verdict is attacked on the ground that it is excessive, this court will not disturb the same unless the jury has committed some gross and palpable error, or acted under bias, influence, or prejudice, or has totally ignored the rule of law by which damages are awarded, but when the amount awarded as damages is so excessive as to indicate that the jury was actuated by bias, prejudice, or passion, it is the duty of this court to hold the verdict to be excessive and to remand the cause with directions to vacate the judgment and grant a new trial unless the plaintiff files a proper remittitur."

And in the body of the opinion we said:

"However, a thorough consideration of our former decisions discloses that the rule is well settled that when the amount of damages awarded for wrongful death is so excessive as to indicate that the jury was actuated by bias, prejudice, or passion, it is the duty of this court to determine and hold that the verdict is excessive and to remand the cause with directions to the trial court to grant a new trial unless proper remittitur is filed by the plaintiff."

The above case was cited with approval in the case of Hembree Chevrolet v. Southard, Okl., 339 P.2d 771. See also Chicago, R. I. & P. Ry. Co. v. Fontron Loan & Trust Co., 89 Okl. 87, 214 P. 172; Oklahoma Portland Cement Co. v. Dow, 98 Okl. 44, 224 P. 168; Independent Cotton Oil Co. v. Beacham, 31 Okl. 384, 120 P. 969; Slick Oil Co. v. Coffey, 72 Okl. 32, 177 P. 915; Gypsy Oil Co. v. Green, 82 Okl. 147, 198 P. 851; City of Sapulpa v. Deason, 81 Okl. 51, 196 P. 544, and Southern Kansas Stage Lines Co. v. Crain, 185 Okl. 1, 89 P.2d 968.

Proper consideration as to whether the verdict is excessive and the result of prejudice and passion necessitates a review of the facts concerning the nature and extent of the injuries.

Plaintiff was a widow, 74 years of age, with a life expectancy of 7.25 years. There was no evidence of earning capacity. The items of medical expense, concerning which there is no dispute, amounted to $1,373.65.

The physician who first examined and later cared for plaintiff testified that she had lacerations of the forehead, general contusions and abrasions over entire body, concussion of the brain and fracture of the left frontal bone to the left of the mid-line. She was given sedation and some blood transfusions. She remained in the hospital from February 22nd to March 17th. Intermittent, recurring headaches were her

primary complaint. She also complained of dizziness. Witness saw plaintiff at intervals from two to six weeks until his last visit on October 20, 1958. In the opinion of witness she had some damage to the brain. She made a satisfactory recovery. After reaching a certain point, her condition became static. The above recovery was confirmed by two other physicians.

At the trial the plaintiff's testimony showed nervousness and dizziness and some impairment of vision. She also stated she had no pain other than in the back and head.

The proof further showed that in October following the accident in February, she had a heart attack. No contention is made that this was due to the accident. Thereafter, she had hired help to take care of the cooking, dishwashing and cleaning, for which service she paid $100 per month.

From the above evidence, we are to determine whether the judgment for $35,000 is excessive. We think it is fairly deducible from the evidence that:

1. There is no evidence of loss of earning capacity.

2. The expense of $1,373.65 is not in question.

3. There is evidence of permanent disability in some impairment of vision and dizziness.

4. How much of the expense for help was occasioned by the heart attack, how much by the accident, or how much by advanced age cannot be definitely ascertained and is therefore a matter of conjecture.

5. If it is assumed that all of this expense were attributable to the accident, the balance of the judgment, approximately $23,500, would be the award for the remaining elements of damage, to wit: pain, and suffering and permanent injury.

6. Plaintiff was 74 years of age with an expectancy of 7.25 years.

Not only do we think the verdict is excessive but under the authorities cited in the companion case of St. Louis-San Francisco Ry. Co. v. Fox, supra, we are of the opinion that the amount of the verdict in the instant case indicates that the jury was in part motivated by prejudice and passion and for said reasons the defendants are entitled to a new trial herein, and it is so directed, unless plaintiff, within ten days after the mandate herein reaches the trial court, files a remittitur of that part of the judgment, which, exclusive of costs, is in excess of $25,000.

Affirmed subject to remittitur, otherwise reversed for new trial.

BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON and BERRY, JJ., concur.

WILLIAMS, C. J., and JACKSON, J., dissent.